[No. A131432. First Dist., Div. One. Dec. 19, 2011.]

In re I.A., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
J.W., Defendant and Appellant.

## COUNSEL

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard Roy Karlsson, Acting County Counsel, and Grace Fong-Mei Tam, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MARGULIES, Acting P. J.**—I.A. (minor) was detained at birth by Alameda County Social Services Agency (agency) after she tested positive for cocaine. As a basis for jurisdiction, the agency alleged I.A.'s mother (Mother) abused drugs, preventing her from caring properly for the minor, and Mother and the minor's alleged father, appellant J.W. (Father), had engaged in domestic violence and had criminal histories. The juvenile court sustained all of the jurisdictional allegations and detained the minor. Father contends the jurisdictional findings involving his conduct should be vacated because they were not supported by substantial evidence, but he does not challenge the validity of the jurisdictional finding based on Mother's drug abuse. Because Father's contentions, even if accepted, would not justify a reversal of the court's

jurisdictional ruling or the grant of any other effective relief, we decline to address them and dismiss the appeal.

## I. BACKGROUND

The minor was the subject of a dependency petition under Welfare and Institutions Code[1] section 300, subdivisions (b) and (g), filed November 15, 2010.[2] Under subdivision (b), the petition alleged the minor tested positive for cocaine at birth and Mother had a history of drug abuse that limited her ability to care for the minor. In addition, it alleged she had reported episodes of domestic violence between herself and Father, and both had criminal histories. The minor was detained and placed in foster care, and a paternity test was ordered for Father.

The agency's jurisdictional report noted Mother had admitted using crack cocaine prior to giving birth to the minor. She gave birth at home, apparently without proper prenatal care, and had made no provision for the minor's care. Mother had been in and out of drug treatment for the last 10 years, and her two earlier children both resided with their fathers. Father had custody of one of those children, an older sister of the minor. During a meeting with the agency, Father acknowledged he and Mother had "fights," and Mother told the agency Father was verbally abusive and had committed domestic violence. Based on the tone of Father's remarks to Mother during this meeting, the agency's social worker concluded "they were in a domestic violent relationship." Father's arrest record revealed 14 aliases and seven Social Security numbers. He had been arrested for battery against a cohabitant in 2006, resisting an officer in 2005, theft in 2002, and several drug and theft charges in 1990 and 1996.

At the contested jurisdictional hearing, the social worker confirmed Father told her he was arrested for battery in 2006 after he and Mother got into a fight. During the meeting at which this disclosure was made, the social worker observed Father make demeaning remarks to Mother and raise his voice, leading her to characterize his conduct as "emotionally and psychologically abusive." She found "[h]is tone and the manner in which he spoke to [Mother] . . . shocking."

Father testified he had known Mother for about 10 or 11 years and believed he was the minor's biological father.[3] He denied ever being abusive to

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Because the juvenile court later struck the allegations under subdivision (g) of section 300, we do not consider them further.

[3] The appellate record does not disclose the results of Father's paternity test.

Mother. He said the 2006 arrest for battery was based on her false statement to police he had hit her and pointed out no charges were filed in connection with the arrest. He also denied demeaning or otherwise mistreating Mother at the meeting with the agency. Although Father acknowledged having been criminally convicted "a few times when I was younger," he claimed his most recent arrest, before the 2006 arrest, was in 1996.

Mother acknowledged using crack cocaine, testifying she had relapsed seven months into her pregnancy with the minor. With respect to Father, she testified that over the course of their 10-year acquaintance, she "periodically" had occasion to fear him. He would call her names and intimidate her with "forceful and demanding . . . words. They just put me in a certain feeling, you know, a feeling of fear." On three occasions, she had called police when he refused to leave her home. Mother was also reluctant to cross Father, since she depended upon him for access to the daughter of whom he had custody.

Without explanation, the juvenile court found true all of the petition's allegations under section 300, subdivision (b). By the time of the dispositional hearing, Mother was participating in a residential drug treatment program. The court placed the minor in Mother's custody, ordered reunification services for Mother, and granted visitation to Father.

## II. DISCUSSION

Father contends the juvenile court's jurisdictional findings involving his conduct were unsupported because there was no evidence his conduct presented a substantial risk to the minor. The agency urges us to dismiss the appeal, arguing it fails to raise a justiciable issue because Father has not challenged all of the jurisdictional findings. Because we agree with the agency this appeal does not raise a justiciable issue, we do not reach the merits of Father's contention.

### A. *Justiciability Doctrine*

■ It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue. (E.g., *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1205–1206 [97 Cal.Rptr.3d 170] (*Costa Serena*).) The justification for this doctrine, which in general terms requires an appeal to concern a present, concrete, and genuine dispute as to which the court can grant effective relief, is well explained by Wright and Miller's hornbook of federal practice: "The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official

assistance. As to the parties themselves, courts should not undertake the role of helpful counselors . . . . Defendants, moreover, should not be forced to bear the burdens of litigation without substantial justification . . . . Perhaps more importantly, decisions involve lawmaking. Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication." (13B Wright et al., Federal Practice and Procedure (3d ed. 2008) § 3532.1, pp. 372–374, fns. omitted.)

■ The many aspects of the justiciability doctrine in California were summarized in *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450 [246 P.2d 688]: " 'A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition. . . . [A]s a general rule it is not within the function of the court to act upon or decide a moot question or speculative, theoretical or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition. . . .' " (*Id.* at pp. 452–453.) An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status. " ' " 'It is this court's duty " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' " ' " (*Costa Serena, supra,* 175 Cal.App.4th at pp. 1205–1206; see also *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498 [103 Cal.Rptr.3d 889] [a case is moot when it is " 'impossible for the appellate court to grant the appellant effective relief' "]; *Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503 [1 Cal.Rptr.3d 207] ["A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief."].) When the court cannot grant *effective* relief to the parties to an appeal, the appeal must be dismissed. (*Costa Serena,* at p. 1206.)

## B. *Dependency Jurisdiction*

Although Father's appeal was taken from the court's dispositional order, he does not question that order. Rather, he characterizes his appeal as challenging the juvenile court's jurisdictional order.[4] As explained below, however, an examination of the juvenile court's dependency jurisdiction demonstrates the

---

[4] While an appeal cannot be taken directly from a dependency court's jurisdictional order, the jurisdictional order is "appealable by way of a challenge to a dispositional order made subsequent to it." (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1754 [53 Cal.Rptr.2d 687].)

issues raised in his appeal present no genuine challenge to the court's assumption of dependency jurisdiction. As a result, any order we enter will have no practical impact on the pending dependency proceeding, thereby precluding a grant of effective relief. For that reason, we find Father's appeal to be nonjusticiable.

It is commonly said that the juvenile court takes jurisdiction over children, not parents. (E.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310 [113 Cal.Rptr.3d 735]; *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202 [28 Cal.Rptr.3d 213].) While this is not strictly correct, since the court exercises *personal* jurisdiction over the parents once proper notice has been given (*Kern County Dept. of Human Services v. Superior Court*, at p. 310), it captures the essence of dependency law. The law's primary concern is the protection of children. (*In re Joshua G.*, at p. 202.) The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].) The acquisition of personal jurisdiction over the parents through proper notice follows as a consequence of the court's assertion of dependency jurisdiction over their child.[5] (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 [31 Cal.Rptr.3d 697]; *In re Daniel S.* (2004) 115 Cal.App.4th 903, 916 [9 Cal.Rptr.3d 646].) Parental personal jurisdiction allows the court to enter binding orders adjudicating the parent's relationship to the child (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 [26 Cal.Rptr.2d 586]), but it is not a prerequisite for the court to proceed, so long as jurisdiction over the child has been established. (*In re Daniel S.*, at p. 916.) Further, every parent has the option not to participate in the proceeding, even if properly noticed. (*Ibid.*)

As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1212 [66 Cal.Rptr.3d 783]; *In re Alexis H.* (2005) 132 Cal.App.4th 11, 16 [33 Cal.Rptr.3d 242].) Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. (*In re Claudia S., supra,*

---

[5] Although the rights of an alleged father, such as Father, are limited, he is entitled to notice "because notice provides him an opportunity to appear and assert a position and attempt to change his paternity status." (*In re O. S.* (2002) 102 Cal.App.4th 1402, 1408 [126 Cal.Rptr.2d 571].)

131 Cal.App.4th at p. 246.) For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. (*In re Alexis H.*, at p. 16.) As a result, it is commonly said that a jurisdictional finding involving one parent is " 'good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent.' " (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161 [119 Cal.Rptr.3d 153].) For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. (E.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [90 Cal.Rptr.3d 44] [addressing remaining findings only "[f]or [f]ather's benefit"]; *In re Joshua G., supra,* 129 Cal.App.4th at p. 202 [when a jurisdictional allegation involving one parent is found supported, it is "irrelevant" whether remaining allegations are supported]; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330 [79 Cal.Rptr.2d 922] [declining to address remaining allegations after one allegation found supported]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72 [74 Cal.Rptr.2d 770] [same].)

## C. *Available Relief*

On this appeal, Father asks us to review the evidentiary support only for the juvenile court's jurisdictional findings involving *his* conduct. Because he does not challenge the jurisdictional findings involving Mother's drug abuse, however, any decision we might render on the allegations involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction.

Under these circumstances, the issues Father's appeal raises are " 'abstract or academic questions of law' " (*Epstein v. Superior Court* (2011) 193 Cal.App.4th 1405, 1408 [122 Cal.Rptr.3d 850]), since we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding. Even if we found no adequate evidentiary support for the juvenile court's findings with respect to his conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights.

Our inability to grant *effective* relief is illustrated by the conclusion to Father's opening brief. Father's conclusion claims that "[t]he juvenile court

erred when it found jurisdiction as to father" and requests that "the findings, judgment, and order of the juvenile court be reversed." For the reasons discussed above, the court did not find dependency jurisdiction "as to father," since such jurisdiction is asserted over the child, not the parent.[6] While the court did assert *personal* jurisdiction over Father on the basis of its dependency jurisdiction over the minor, Father's arguments, even if accepted in full, would not demonstrate any error in the court's exercise of personal jurisdiction. Similarly, nothing in Father's brief would justify a reversal of the "findings, judgment, and order" of the court. While arguably we could vacate the juvenile court's implicit finding regarding Father's conduct, vacating that finding would have neither legal nor practical consequence.

The only arguably contrary decision is *In re Anthony G., supra,* 194 Cal.App.4th 1060, which considered an isolated jurisdictional finding despite the agency's claim that "we need not review [the father's] sufficiency argument based on section 300, subdivision (g) because jurisdiction over [the minor] will continue under section 300, subdivision (b)." (*Id.* at p. 1064.) The *Anthony G.* court rejected this argument without explanation, stating without more: "We are not persuaded that we should refrain from addressing the merits of [the father's] appeal." (*Id.* at p. 1065.) In light of the agency's apparent failure to characterize its argument in terms of justiciability and the court's failure to explain its rejection of the argument, we do not address this decision further, except to acknowledge we reach a different conclusion on the circumstances presented here.

Father contends we should exercise our discretion to consider his appeal because the finding of jurisdiction could have other consequences for him, beyond jurisdiction. While there is no doubt the court retains the discretion to consider alternative jurisdictional findings (see, e.g., *Ni v. Slocum* (2011) 196 Cal.App.4th 1636, 1641, fn. 1 [127 Cal.Rptr.3d 620]; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [124 Cal.Rptr.3d 795]), Father has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings.

In his opening brief, Father argues we should consider his arguments because "if father's challenge is successful, there could be an impact on both placement and reunification orders." He does not, however, identify any

---

[6] Although reviewing courts sometimes speak of jurisdictional findings being made "as to" a particular parent (e.g., *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1067 [123 Cal.Rptr.3d 660]), the dependency court does not, in fact, make jurisdictional findings "as to" a particular parent. The findings ordinarily involve the conduct, or lack thereof, of one or both parents, but the findings are made with respect to the child, not the parents.

specific potential impact, and we can find none on our own.[7] It is true that one provision of dependency law, section 361, subdivision (c)(1), distinguishes between "nonoffending" and "offending" parents. Subdivision (c)(1) requires the court to permit a nonoffending parent to retain custody of a child when the child is removed from the custody of an offending parent.[8] Because the minor never resided with Father, however, he was ineligible for custody under subdivision (c)(1) even if nonoffending. (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 970 [129 Cal.Rptr.3d 684].) Some courts have also referred to a noncustodial parent eligible for custody under section 361.2, subdivision (a) as a "nonoffending, noncustodial parent." (E.g., *In re M.C.* (2011) 195 Cal.App.4th 197, 224 [123 Cal.Rptr.3d 856].) In fact, the statute does not require a parent to be nonoffending (*In re V.F.* (2007) 157 Cal.App.4th 962, 970 [69 Cal.Rptr.3d 159], superseded on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58 [81 Cal.Rptr.3d 918]), and Father is, in any event, ineligible for custody under section 361.2 because he is not a presumed father. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801 [116 Cal.Rptr.2d 123].) Further, while misconduct can result in a denial of reunification services, any finding must be by clear and convincing evidence. (§ 361.5, subd. (b).) Because a jurisdictional finding need only be made by a preponderance of the evidence, it cannot support a denial of reunification services under section 361.5. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 [104 Cal.Rptr.3d 478].) We find no potential impact of the challenged jurisdictional finding on the present dependency proceedings.

Father argues in his reply brief that we should address the finding because it might have some consequence in a future dependency or family law proceeding, citing *In re C.C.* (2009) 172 Cal.App.4th 1481 [92 Cal.Rptr.3d 168]. *C.C.* itself recognized the claim of such a future impact was "highly speculative" for the visitation issue considered there, and *C.C.* never identified any specific threatened future effect. (*Id.* at p. 1489; see similarly *In re D.C., supra,* 195 Cal.App.4th 1010, 1015 [following *C.C.* in the context of multiple jurisdictional findings without identifying concrete future impact].) Although raising the specter of a future impact, Father, too, fails to

---

[7] The decision cited by Father in support, *In re John S.* (2001) 88 Cal.App.4th 1140 [106 Cal.Rptr.2d 476], concerned the interpretation of section 355.1, which establishes various evidentiary presumptions. *John S.* is therefore distinguishable as presenting a legal, rather than an evidentiary, issue. In any event, *John S.* similarly fails to identify any actual subsequent impact. (88 Cal.App.4th at p. 1143.)

[8] While section 361, subdivision (c)(1) does not define "nonoffending," it is fair to assume that a parent whose conduct is the basis for a jurisdictional finding cannot be considered nonoffending.

suggest any way in which this finding actually could affect a future dependency or family law proceeding, and we fail to find one on our own. In any future dependency proceeding, a finding of jurisdiction must be based on current conditions. (*In re J.N., supra,* 181 Cal.App.4th at p. 1022.) A past jurisdictional finding, particularly one based largely on a single instance of violence already five years old, would be entitled to no weight in establishing jurisdiction, even assuming it was admissible for that purpose. Instead, the agency will be required to demonstrate jurisdiction by presenting evidence of then current circumstances placing the minor at risk. Other relevant dependency findings similarly would require evidence of present detriment, based on the then prevailing circumstances of parent and child. The prospect of an impact on a family law proceeding is even more speculative. Because we find no threatened prejudice to Father from this jurisdictional finding, we decline to exercise our discretion to review it.

## III. DISPOSITION

The appeal is dismissed.

Dondero, J., and Banke, J., concurred.

A petition for a rehearing was denied January 17, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 21, 2012, S199752.