Filed 4/1/15 Certified for Publication 4/28/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRIANA V., et al., Persons Coming Under the Juvenile Court Law. | B256073 |
| | (Los Angeles County Super. Ct. No. DK02764) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| LUIS V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Tony L. Richardson, Judge. Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel for Plaintiff and Respondent.

Luis V. (father) appeals from a judgment of the juvenile court establishing jurisdiction over his three daughters: Briana V. (born Jan. 2001); Marlene V. (born Feb. 2004); and Patricia V. (born Mar. 2005) pursuant to Welfare & Institutions Code section 300.[1] Father contends that substantial evidence does not support the juvenile court's findings as to him. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

**The family**

Prior to the commencement of this action, father was the primary caregiver for the children Briana, Marlene and Patricia, who lived with father and paternal grandmother (PGM). Father and the girls' mother, Chantha T. (mother) had been separated for approximately two years. Mother was in a new relationship with P.K. and they had a child together, Vincent K., born in December 2012.

**Initial investigation**

On December 4, 2013, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that Briana had been physically abused by father and PGM. The caller stated that father and PGM hit and slapped Briana due to her leaving the home without permission. There were no marks or bruises observed on Briana.

On December 10, 2013, a DCFS social worker went to the family home. Father denied the allegations that he hit or slapped Briana. Father reported that on November 29, 2013, Briana left the family home without permission and did not return until 1:30 a.m. Father stated that this was the first time Briana had left the home without permission, and he was worried about Briana's behavior. Briana had been attending counseling through her school for about three months.

The PGM also denied the allegations in the petition. PGM stated that she assists father in caring for the children, and that recently Briana had been acting out.

---

[1] All further statutory references are to the Welfare & Institutions Code.

Briana stated that she left home on November 29, 2013, and did not return until 1:00 a.m. She left home because her father became upset with her for leaving with her sister without permission. Briana stated that father slapped her one time on the face, but did not leave any marks on her face. When she returned that night, PGM tapped her on the mouth with her hand. Briana denied that she was afraid to stay in the home with father and PGM. However, Briana would prefer to live with her mother because her mother is not as strict as father, though Briana had not been in contact with mother for about three months.

Marlene denied any physical abuse by father or PGM. She stated that Briana "acts bad and wants to do whatever she wants." Patricia also denied any physical abuse and denied witnessing any physical abuse of Briana. Patricia stated that she enjoys living with father and PGM.

On December 11, 2013, the social worker asked father about his criminal history. Father responded, "What the fuck? Why do you have to go there? Nobody else has?" Father provided the social worker with contact information for his probation officer. The social worker informed father that in order to close the referral she had to contact his probation officer. Father was upset and stated that he resides in the back home while PGM resides in the front house with the children. He then stated that he sleeps in his car in Long Beach.

The social worker interviewed mother telephonically. Mother confirmed that she left the three girls in the care of father and PGM because father would not leave her alone unless she allowed the children to remain with him. She denied any concern of abuse or neglect as to father or PGM.

On December 13, 2013, the social worker interviewed father's probation officer, Pedro Arriola, who stated that father was convicted of rape, kidnapping, robbery and oral copulation in 1994. Father was arrested on May 16, 2013, and released on October 30, 2013, due to his failure to register as a sex offender. About a month before, PGM had submitted a letter to the probation department requesting that father reside in her home. However, neither PGM nor father reported that there were children living in the home.

3

Father denied that he resides with or cares for any children. The conditions of father's probation were: not to subscribe to internet services; not to utilize sex oriented services; to inform of his residence; not to engage in criminal conduct; to inform of any new arrest; not to own or possess weapons; to participate in a rehabilitation program; to participate in a mental health plan; sex registration; not to associate with other sex offenders; not to reside near schools; not to reside with minors; not to possess children's clothes or toys; and not to use or possess a computer.

On December 13, 2013, a social worker arrived at the family home. PGM informed the social worker that father had been arrested. Neither PGM, nor paternal uncles David and Octavio knew why father had been arrested.

PGM then claimed that father lived in the back house, not with her and the children. She added that he also resided in his car. PGM stated that she did not think it was fair that father was still being punished for a 20-year-old conviction. PGM cried when the social worker informed her that she and mother were placing the children at risk by allowing father to bathe, dress and care for the children knowing that he was in violation of his probation. PGM wanted the children to remain in her care. The social worker noted that the home was cluttered and disorganized and that the bedroom occupied by paternal uncle Octavio had graffiti which was not a positive environment for the children.

The social worker interviewed Marlene, who was nine years old at the time. Marlene reported that father no longer bathed her. The last time father assisted her with a bath was when she was five or six years old. Sometimes PGM assisted her. Father still assisted Patricia with her baths. Father assisted Marlene and Patricia with getting dressed daily for school. Marlene admitted that father sometimes shared a bedroom with the girls. Marlene denied any sexual, physical, or substance abuse.

Eight-year-old Patricia was also interviewed. Patricia stated that father and PGM bathed her. Father turned on the water for her and scrubbed her vaginal area and buttocks. The social worker asked if Patricia had ever seen father's private part, to which Patricia replied, "I cover my eyes cause I don't like to see his thing." Father sometimes

4

got dressed while Patricia was bathing and he "pees." Patricia denied any penetration and father had not asked her to touch his penis. The social worker asked Patricia if she was okay with father bathing and dressing her. Patricia moved her head side to side as she looked down. She disclosed she sometimes shared a bedroom with father. Patricia denied any sexual, physical or substance abuse.

Paternal uncle Octavio denied knowing the conditions of father's probation. He was aware that Briana was defiant and left home without permission. The social worker observed that paternal uncle appeared to be under the influence of illegal drugs, therefore she asked him not to have any contact with the children. Paternal uncle stated that he spends two to three days a week at the home. Paternal uncle admitted to using marijuana one to two times per day.

On December 14, 2013, the social worker interviewed mother. Mother was aware that father was convicted of sexual offenses and was a registered sex offender. When she and father stopped getting along, she decided to leave father and the children because this was the only way father would leave her alone. She trusted PGM would keep the children safe. She was unaware that father bathed and dressed the children. She admitted making a mistake by not caring for the girls. Mother was aware that Briana was suspended from school for using marijuana.

Briana was also interviewed. She denied sexual abuse. She confirmed that father slapped her on the face after she left home without permission. Briana stated that PGM assists Marlene and Patricia with bathing and getting dressed. She leaves for school earlier than Marlene and Patricia, so she was not aware if father bathed or dressed them. Briana denied that she and her sisters share a bedroom with father. Briana stated that she would like to live with mother however, she had no concerns with her sisters being under the care of PGM.

On December 17, 2013, Probation Officer Arriola informed the social worker that father had been arrested on December 13, 2013. Father confirmed that he had violated his parole by visiting schools, having children's clothing in his possession, having a

5

computer, and caring for the children. Arriola stated that father and PGM were reminded on several occasions of the conditions of father's probation.

Based on the above information, the social worker determined that the safety of the children could not be assured.

**Section 300 petition**

DCFS detained Briana, Marlene, and Patricia from father, and on December 20, 2013, filed a section 300 petition on behalf of Briana, Marlene, Patricia, and Vincent.[2] The petition alleged under subdivision a-1 that father had physically abused Briana when he slapped her on the face. Under subdivision (b) (failure to protect), counts 1 to 4, the petition alleged that father is a registered sex offender and had exposed his penis to Patricia and bathed and dressed the girls; that father physically abused Briana by slapping her face; and that father failed to protect the girls by allowing paternal uncle Octavio, who is a current user of marijuana, to stay in the home. Under subdivision (d) (sexual abuse), the petition repeated the allegations that father was a registered sex offender, had bathed and dressed the children, and shared a bedroom with them.

In a December 20, 2013 "Last Minute Information for the Court," the social worker reported that on December 19, 2013, the children were detained from mother and her boyfriend because they tested positive for amphetamines and methamphetamines.

**Detention**

Father was not present at the December 20, 2013 detention hearing. The juvenile court found father to be the presumed father of Briana, Marlene, and Patricia. The court ordered the children detained.

In a January 2, 2014 "Interim Review Report," DCFS reported that Briana was placed in a foster home, and Marlene and Patricia were placed in a different foster home. On January 23, 2014, DCFS filed a first amended petition, adding allegations that mother and her boyfriend used amphetamines and methamphetamines.

---

[2]     Vincent is not a subject of this appeal.

**Jurisdiction/disposition report**

DCFS filed a jurisdiction/disposition report on January 30, 2014. All four children remained in foster care. When Briana was interviewed in her foster home and asked about the physical abuse by father, Briana nodded and explained that she had left the home without permission. Briana stated that father picked her up and "when we got to the house he kept shoving me and I started yelling at him. He slapped me and I left the house again." Father slapped her with an open hand on her left cheek. She denied bruising, but stated that there was redness and that father slapped her hard enough to make her gums bleed. After father slapped Briana, she could taste blood and noticed her gums were bleeding on the side of her mouth.

Briana was aware that father was a sex offender, but she did not know that he had to register. She had never seen father bathing or dressing her sisters. Briana denied sexual abuse and denied that her sisters slept in father's room. She stated that there was a wall blocking father's room so that the family could only enter his room from the outside. Briana was also aware that her uncle smoked marijuana but she had never seen him smoke.

Marlene was also interviewed. She did not see father hit Briana. She was aware that Briana smoked marijuana, and stated that PGM threatened to take away her iPod. Marlene denied seeing anyone's private area or being touched in the private area. Marlene stated that PGM gave her baths but that father did not. She had requested that father stop giving her baths and dressing her. She denied feeling uncomfortable around father. Marlene was aware that paternal uncle smoked marijuana. Briana had showed her marijuana. Marlene informed the social worker that the children had found cigarettes on the floor of the paternal uncle's room.

Patricia also denied seeing anyone hit Briana and denied seeing her father's private area. She did not recall saying that she had seen father's penis. She noted that she always dressed herself and bathed herself. Patricia had not seen the paternal uncle smoking, but knew that Briana smoked marijuana. She stated that Briana goes to her father's van and smokes weed.

7

Mother was aware that father had slapped Briana because Briana called and told her. Mother knew father was strict, but had never seen him hit the children. Mother knew father was a registered sex offender, but she did not know that he was not supposed to care for the children. Mother was aware that paternal uncle smoked marijuana because she smelled it when she used to live in PGM's home. Briana told mother that paternal uncle would smoke marijuana then blame it on Briana.

Father denied both the sexual abuse allegations and that he hit Briana. He claimed he only yelled at her. Father explained that his room was attached to PGM's home, but it was divided from the main house and had its own bathroom and shower. He told PGM to lock the door since he was on probation.

PGM said that Briana was too rebellious and was going to say father hit her even though it was not true. PGM stated that Briana was addicted to smoking marijuana. Regarding father's criminal history, PGM stated, "It has been 20 years since my son has been dealing with this. It was all a lie!" PGM added that she had consulted with an attorney and they were going to reopen the case. As to allegations of inappropriate conduct with the children, PGM stated "I don't know if the girls said those things, but if they did, they are lying. I have no idea why they wanted to talk badly about their father. . . . I know my son and he has always been very careful. He always comes out of the shower already dressed. He would not expose himself to them. If he helped them get dressed, he would just hand them their clothes and Briana would dress them and she would bathe them." PGM disclosed that paternal uncle lived in her home. She thought he smoked marijuana, but she had never seen him doing so.

Briana's foster mother reported that Briana was rebellious and displayed overly sexualized behavior. Briana made inappropriate comments about the foster mother's sons, so the foster mother was considering asking that Briana be removed from her home.

DCFS recommended that no reunification services be offered to father because he was a convicted sex offender.

On January 30, 2014, DCFS filed a Last Minute Information for the Court reporting that on January 22, 2014, Briana was hospitalized in a mental hospital for

8

having suicidal ideation. Briana had cut her wrist. It appeared that each time Briana had contact with her family she cut herself and felt suicidal.

**Father's arraignment**

Father's arraignment hearing took place on January 30, 2014. Father appeared in custody and his counsel informed the court that his expected release date was March 3, 2014. The court set the matter for mediation.

**Mother's mediation**

On March 4, 2014, mother and her boyfriend agreed to the amended language in the first amended petition. They submitted waiver of rights forms, pleading no contest.

**Interim review report**

On May 1, 2014, DCFS submitted an interim review report. DCFS reported that Patricia and Marlene were placed in the same foster home with Vincent. Briana was placed at a group home in an effort to stabilize her mental health needs. Briana was taking psychotropic medication after having been diagnosed with depression, suicidal ideation and mood instability. Briana continued to engage in self-harming behavior while at the group home. The foster family agency social worker informed DCFS that Briana's symptoms were elevated when Briana had contact with PGM, but she was unable to explain why. Briana had difficulty getting along with females and preferred to be around males.

Father had been released from custody and was living in PGM's home. He was not participating in any services.

The dependency investigator contacted the Department of Probation supervisor, Mr. Jew, regarding father's visitation with the girls. Mr. Jew stated that father could not have visits with the girls. The presence of a monitor or family member was not an option, as father was categorically prohibited from having contact with children.

**Jurisdiction/disposition hearing**

The jurisdiction/disposition hearing took place on May 1 and 2, 2014. The court noted that mother and her boyfriend had pled no contest to the agreed-upon amended counts in the first amended section 300 petition.

Father submitted two documents for the court's consideration: a letter from St. Gertrude the Great Catholic Church, stating he was a registered member of the parish and attended weekly Sunday mass; and a card from Advanced Psychological and Behavioral Medicine Center, showing a next appointment of April 9, 2014, at 10:30 a.m.

Father testified that he was on probation, and expected to be on probation for five more months. Father explained that the condition of no contact with his children was a condition of probation and not a condition of the requirement that he register as a sex offender. Father was on probation for failing to register. He had been on probation since October 29, 2013, and was living at PGM's home.

Father's counsel argued that father be dismissed from the petition because he did not present a risk of harm to the children. Father's counsel argued that sustaining the counts as to father was not necessary because his probation requirements already protected the children. Briana's counsel joined in asking that father be dismissed from the first amended petition.

The younger children's counsel asked that count d-1 be dismissed because the children had not reported being inappropriately touched by father. However, the younger girls' counsel was concerned that father failed to register as a sex offender and failed to do what was necessary to follow the conditions that were set for him.

The juvenile court sustained the following counts: (1) count b-1, alleging that father has a criminal history of convictions of "Rape:Force/Fear," failure to register as a sex offender, and that mother placed the children at risk of harm by permitting the children to reside in father's home with him; (2) counts b-3 and j-2, alleging that father inappropriately disciplined Briana by slapping her face, and that such conduct placed all the children at risk of harm; (3) count b-4, alleging that father placed the children at risk of harm by permitting his brother Octavio, a known marijuana user, to have access to the children in father's home; (4) count b-5, alleging that mother is a recent user of amphetamines and methamphetamines; and (5) count b-6, alleging that Vincent's father is a recent user of amphetamines and methamphetamines.

10

The court proceeded with the dispositional portion of the hearing. DCFS asked that father not be provided with family reunification services under section 361.5, subdivision (b)(16), which provides that family reunification services need not be provided to a parent who is required to be registered on a sex offender registry.

Father's counsel admitted that father was not in a position to take custody of the children. Father asked that the children remain with PGM or be returned to home of mother. Father argued that it was in the best interests of the children to offer him reunification services. Father would be off of probation in five months and at that time would want to have shared custody of the children.

The juvenile court proceeded to declare the children dependents of the court, and found a substantial danger if the children were returned to the parents. The children were ordered detained in the care of DCFS. Each parent was granted monitored visits with the children. As to father, such visits were to be in keeping with his probation requirements.

The court agreed with father that he should be offered family reunification services, and despite DCFS's recommendation, ordered services for father. Father was ordered to participate in parenting education and individual counseling to address case issues. DCFS requested an order for sexual abuse counseling as well, which the juvenile court granted. The court acknowledged that there was no evidence that the children are at risk of sexual abuse, but stated that because it had no understanding of what programs father might have participated in as a registered sex offender, such an order was appropriate.

The court set a six-month review hearing for October 31, 2014.

On May 5, 2014, father filed a notice of appeal.

**DISCUSSION**

**I. Father's appeal is not justiciable**

The juvenile court in this matter sustained counts against both mother and father. While father challenges the sufficiency of the evidence as to his conduct, he makes no challenge to the jurisdictional findings against mother.

11

"[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*).)

A similar situation occurred in the matter of *I.A.* There, the father asked the court to review the evidentiary support only for the juvenile court's jurisdictional findings against him. The *I.A.* court explained:

> "Because he does not challenge the jurisdictional findings involving Mother's drug abuse, however, any decision we might render on the allegations involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction.

> "Under these circumstances, the issues Father's appeal raises are '"abstract or academic questions of law"' [citation], since we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding. Even if we found no adequate evidentiary support for the juvenile court's findings with respect to his conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights."

(*I.A., supra*, 201 Cal.App.4th at p. 1492.)

While the father contended that the finding of jurisdiction could have other consequences for him beyond jurisdiction, the *I.A.* court noted "Father has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings." (*I.A., supra*, 201 Cal.App.4th at p. 1493.)

However, an appellate court may address the merits of the jurisdictional findings against one parent where "the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)  In contrast to *I.A.*, the *Drake M.* court decided to consider the merits of the father's appeal, stating:

> "Here, the outcome of this appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent. Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights. Thus, although dependency jurisdiction over Drake will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits."

(*Drake M., supra*, 211 Cal.App.4th at p. 763.)

In *Drake M.*, the father challenged a single jurisdictional finding against him involving his use of medical marijuana.  Because this single jurisdictional finding was the difference between the father being an offending parent versus a non-offending parent, the appellate court addressed the merits of his appeal.  The *Drake M.* court noted that DCFS had failed to show that the father was unable to care for his child due to substance abuse.  Without more, mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found.  (*Drake M., supra*, 211 Cal.App.4th at p. 764.) There was no evidence that father had a substance abuse problem or that father was unable to supervise or protect his child.  (*Id.* at pp. 767-769.)  The jurisdictional finding involving father was therefore reversed.  (*Id.* at p. 771.)

Father argues that, under *Drake M.*, this court should address his challenges to the jurisdictional findings involving him.  However, there are several significant differences between the present matter and the situation in *Drake M.*  In *Drake M.*, there was a single jurisdictional finding against the father involving his use of medical marijuana.  In this case there are three jurisdictional findings involving separate conduct of father:  his

failure to register as a sex offender, his physical abuse of Briana, and his act of permitting his brother to use marijuana in the home. Thus, in this case, as opposed to *Drake M.*, there is not a single jurisdictional finding making the difference between father being a so-called offending or a non-offending parent. The *Drake M.* decision does not suggest that this court must address each of several jurisdictional findings against a parent because if all such findings are reversed, the parent will be non-offending. This would completely undermine the general rule that we need not address jurisdictional findings involving one parent where there are unchallenged findings involving the other parent. (*I.A., supra*, 201 Cal.App.4th at p. 1492.) Instead, it would turn this rule on its head, requiring the appellate court to address all jurisdictional findings against a parent even when the jurisdictional findings involving the other parent are not challenged. This takes the *Drake M.* exception too far.

*Drake M.* provides a narrow exception to the general rule that we will not address the merits of challenges to jurisdictional findings that do not affect the child's status as a dependent of the court. It does not apply where, as here, several jurisdictional findings have been sustained involving different conduct of the parent.

This is particularly true where, as here, the parent is a registered sex offender. When a parent is required to register as a sex offender, this constitutes prima facie evidence that the subject minor is at substantial risk of abuse or neglect. (§ 355.1, subd. (d)(4).) Thus, father is already living with a presumption that his children are subject to dependency jurisdiction. Nothing can be done on appeal to change that fact for future dependency proceedings. In other words, we cannot change the fact that father will be prejudiced by his status as a registered sex offender in future proceedings. Father is a prima facie offending parent. Nothing we do in this appeal will make him a non-offending parent.[3]

_____

[3] We note that there is some tension between the terms "offending" and "non-offending" parent and the generally accepted principle in dependency law that "the juvenile court intervenes to protect a child, not to punish the parent. [Citation.]" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233.) Because the system is designed to protect

14

Father argues that we should address the merits of his claim because "the finding . . . serves as the basis for dispositional orders that are also challenged on appeal." (*Drake M., supra*, 211 Cal.App.4th at pp. 762-763.)  Here, father challenges one dispositional order:  the order requiring him to participate in sexual abuse counseling.  However, this dispositional order only relates to one of the three jurisdictional findings challenged on appeal.  Even if we were to address father's failure to register as a sex offender because it is the basis for the challenged dispositional order, there would still be two remaining findings supporting jurisdiction based on other conduct of father.

In sum, under the circumstances of this case, father has failed to show that this case fits into the narrow exception created by *Drake M.*  For this reason, we decline to address the evidentiary support for the challenged jurisdictional findings.  (*I.A., supra*, 201 Cal.App.4th at p. 1492.)

## II.  The juvenile court did not abuse its discretion in ordering sexual abuse counseling

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion.  [Citation.]"  (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.)

The juvenile court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child."  (§ 362, subd. (a); *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.)  The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition.  (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008.)  In fact, there need not be a

children, not vilify parents, dependency jurisdiction is not about parental fault.  (See, e.g., *In re V. M.* (1987) 190 Cal.App.3d 753, 757 ["the imposition of juvenile dependency jurisdiction must depend on the welfare of the child, not the fault or lack of fault of the parents"].)  This is why courts of appeal generally do not address jurisdictional findings against a parent where the actions of either parent bring the child within one of the statutory definitions of a dependent.  (*I.A., supra*, 201 Cal.App.4th at p. 1492.)  The use of the terms "offending" parent and "non-offending" parent is unfortunate, given the extensive case law articulating the concept that jurisdiction is not about parental fault.

15

jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order. (See *I.A., supra*, 201 Cal.App.4th at p. 1492 ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

Father acknowledges that the juvenile court has wide latitude in making orders for the well-being of the child. However, father argues that the order regarding sexual abuse counseling for father was not reasonably necessary to eliminate the conditions that led to the dependency. Father points out that the juvenile court admitted there was no evidence that the children came under the provisions of section 300, subdivision (d) (sexual abuse). Thus, father argues, the order for father to participate in sexual abuse counseling had nothing to do with why the children were brought within the court's jurisdiction.

We find that the trial court did not abuse its discretion. At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183; *In re Christopher H., supra*, 50 Cal.App.4th at pp. 1006-1008.) Instead, the court may consider the evidence as a whole. Here, the evidence showed that father was a registered sex offender. Father's status as a registered sex offender was one of the conditions that led to the dependency. In addition, father was in violation of the conditions of his probation and was arrested on December 13, 2013, for visiting schools, having children's clothing in his possession, having a computer, and caring for his children. The juvenile court was concerned because it had no understanding of what programs father had participated in as a registered sex offender. Under these circumstances, we cannot say that the juvenile court's order requiring father to attend sexual abuse counseling was beyond the bounds of reason.

*In re Sergio C.* (1999) 70 Cal.App.4th 957, is distinguishable. In that case, the father contested a dispositional order requiring that he submit to drug testing. The only evidence of the father's alleged drug use was an unsworn and uncorroborated allegation of the mother, an admitted drug addict who abandoned her children. Because the father flatly denied drug use and otherwise cooperated fully with the court's orders, the matter

16

was reversed and remanded for further proceedings to determine whether drug testing was necessary. Here, unlike *Sergio C.*, father does not deny the allegations regarding his status as a registered sex offender and his violation of probation. Thus in this case, as opposed to *Sergio C.*, there is an evidentiary basis for the dispositional order.[4]

**DISPOSITION**

The judgment is affirmed.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

---

[4]     Similarly, in *In re Basilio T.* (1992) 4 Cal.App.4th 155, also cited by father, there was nothing in the record to suggest that either parent had a substance abuse problem, therefore the substance abuse component of the reunification plan was reversed. (*Id.* at pp. 172-173.)

Filed 4/28/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRIANA V., et al., Persons Coming Under the Juvenile Court Law. | B256073 |
| | (Los Angeles County Super. Ct. No. DK02764) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | **ORDER FOR PUBLICATION** |
| Plaintiff and Respondent. | |
| v. | |
| LUIS V., | |
| Defendant and Appellant. | |


THE COURT:*

The opinion in the above entitled matter filed on April 1, 2015, was not certified for publication.


For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


*ASHMANN-GERST, Acting P. J., CHAVEZ, J., HOFFSTADT, J.


1