Filed 1/8/25  In re N.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.B. et al., Persons Coming Under the Juvenile Court Law. | E083468 |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.B., <br><br> Defendant and Appellant. | (Super.Ct.Nos. J299261, J299263 & J299264) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court found true the allegations pertaining to defendant and appellant J.B. (father); removed Ja.B. (born January 2010) and N.B. (born December 2010) (collectively minors);[1] and bypassed reunification services to father pursuant to Welfare and Institutions Code section 361.5, subdivisions (b)(12) (parent convicted of a violent felony) and (e)(1) (parent incarcerated and services would be detrimental to the minor).[2] On appeal, father contends insufficient evidence supports the jurisdictional finding against him and, therefore, we must reverse the court's order bypassing his reunification services. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2023, personnel from plaintiff and respondent, San Bernardino County Children and Family Services (the department), received an immediate response referral alleging caregiver absence, incapacity, and general neglect. The reporting party indicated that mother had been arrested for grand theft and contributing to the delinquency of a minor while participating in a large-scale robbery ring involving her four children, other children, and gang members.

---

[1]  J.B. is the father of minors. The proceedings below also involved minors K.K. and A.C., who had different fathers. The latter minors, their fathers, and mother are not parties to this appeal.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Ja.B. admitted to the social worker that mother had been stealing clothing while she and her sister, N.B., were present in the store, but she denied participating in any theft herself. She said that father was currently incarcerated. Ja.B. reported using marijuana twice. She indicated that mother had been arrested in the past.

N.B. admitted placing one item in her clothing but denied mother told her to do so. N.B. denied being involved in any other thefts with mother at other locations. K.K. denied any knowledge of mother stealing from the store, but admitted she was aware mother had gone to jail twice for stealing.

A.C. admitted being in the store while mother shoplifted. She said mother gave her several items with which to leave the store. A.C. said, " 'I wi[sh] my mother would stop stealing, she steals because she doesn't []want to use her own money.' " A.C. admitted Ja.B. and N.B. have gone out with mother and returned with stolen items.

The maternal grandmother said that Ja.B and N.B. lived with her for 11 years. She returned them to mother in hopes that mother could provide appropriately for them.

Mother had 10 prior department referrals, which were all deemed unfounded or inconclusive. She had several prior arrests for petty theft, grand theft, retail theft, and willful cruelty to a child between 2016 and 2023. Father had criminal convictions for robbery in 2012, illegal possession of an assault weapon in 2014, and attempted murder in 2022.

The department filed juvenile dependency petitions alleging mother had an unstable lifestyle and lacked parenting skills (b-1), mother included minors in criminal activity (b-2), father failed to provide a safe living environment (b-3), that mother left minors without support while she was incarcerated (g-4), and that father left Ja.B. without support while he was incarcerated (g-5).[3]

Father did not appear at the hearings on December 6 and 12, 2023. Father's counsel noted that father was in prison. The court detained minors on December 12, 2023.

In the jurisdiction and disposition report filed January 22, 2024, the social worker recommended the court find the g-4 allegation untrue and the remaining allegations true. The social worker recommended minors be removed from parents, mother receive reunification services, and reunification services be denied father pursuant to section 361.5, subdivisions (b)(12) and (e)(1). Father "reported he does not want to be present for court 'because it's a process' that he has to go through."

The social worker received a copy of the crime report for one of the incidents on December 2, 2023: "According to the report the mother 'stole several items by concealing them on her person and walking out of the business. [Mother's] 12 year old daughter concealed several items on her person and left without paying as well.' "
" '[Mother] was seen on video at several other locations with her children stealing items. [Mother] is using her children to steal items and the same methods of stealing occur at

_____

[3] The g-5 allegation was alleged pertaining to Ja.B. but not N.B.

other locations.' " Mother " 'is conspiring with her children to commit theft of retail stores. Not only is she conspiring, but she is contributing to the delinquency of her own children, by allowing and encouraging them to steal items from retail stores.' "

N.B. reported that "they went in the store and her mom put something [in] her own shirt and that the mother put knives in her purse. The child reported that she put baby powder in her pants." Mother denied all the allegations.

Father was most recently admitted to prison on July 27, 2022; his parole eligibility date was listed as January 2034. Mother reported that father was involved with minors until they were about two years old; father was then incarcerated for five years. When he got out of prison, "he then went right back in." She reported that he has never been there for them physically or mentally or provided support. When father calls, she tries to get minors to talk to him, but sometimes they do not want to be bothered. Father reported he had a good relationship with minors.

Ja.B. reported that father is in jail; "the last time she saw [him] was when he got out and she went with him for a while." She said he called her often. N.B. said, "she last saw [] father when she was eight [] or when she was a baby." She said, "she does not really have a good relationship with the father."

Father informed the social worker that he would like minors to be placed with his sister. Mother suggested minors be placed with the maternal grandmother or the maternal aunt.

The department initially placed minors with a great-aunt.[4] Subsequently, the great-aunt texted the social worker that she intended to " 'surrender' " minors to the department: Minors " 'have become disruptive to the home and I have concerns for the safety of my own children. It appears that they may have gang ties as I've heard their conversations on the phone with their friends and [Ja.B.] last night was overheard saying how she wants to fight . . . .' " They " 'are very angry and said they want to be removed from my home.' " " 'They hate me and don't want to be here and would rather be with' " the department.

A maternal aunt, who had completed an assessment, was willing to take in minors. The court placed minors with the maternal aunt on January 8, 2024.

On December 15, 2023, the court issued an order directing the warden to permit father's presence at the next hearing. On January 23, 2024, after being advised of his right to appear, father waived his right to be physically present but indicated he wished to participate by videoconference or telephone.

In father's statement of parentage, father indicated he had helped minors with their homework and purchased them clothes and shoes. He asserted that minors had spent weekdays and weekends with his family and wished to be housed with his family.

At the jurisdiction and disposition hearing on January 25, 2024, the court dismissed the g-4 allegation against mother. Father's counsel stated, "that although Father was on hold for, approximately, 40 minutes, he did waive any further appearance

---

[4] The report does not specify whether this was a maternal or paternal great-aunt.

6

on this matter, and he authorized me to appear on his behalf." Father's counsel submitted on the allegations.

Father's counsel objected to the recommendation to deny father reunification services: "He indicated to me that he does have an ongoing relationship with his children; that he had regular and consistent telephone calls. He is asking that he be allowed to resume telephone calls with his children, and . . . . Father has also requested that Paternal Grandmother . . . be assessed for placement, as well as the paternal aunt . . . , and I have their phone numbers and can provide them to County Counsel and the Court officer." The court responded, "They will also need to contact the County as well."

The juvenile court found the remaining allegations true. The department noted that "father is currently in prison for attempted homicide. I think the conviction was in 2022, and I think he is going to be incarcerated for at least ten years." The court ruled father "will qualify under two bypass provisions, and the Court will find that those provisions do apply, and that it would not be in the children's best interest to provide services to him."

## II. DISCUSSION

Father contends insufficient evidence supports the jurisdictional finding as to him and, therefore, we should reverse the court's order bypassing his reunification services. We affirm.

### A. *Justiciability*

" '[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent. [Citations.]' " (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 (*Ashley B.*); accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896.) " 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .' [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308 (*Briana V.*); accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 237 (*L.O.*).)

As here, where father does not challenge the jurisdictional findings as to mother, " 'any decision we might render on the allegation[] involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's

jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction.' " (*Briana V.*, *supra*, 236 Cal.App.4th at p. 308.)[5]

"In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; accord, *In re S.F.* (2023) 91 Cal.App.5th 696, 719-720 (*S.F.*); *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*) ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established."].)

"However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; accord, *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164; contra, *I.A.*, *supra*, 201 Cal.App.4th at

---

**5** Father did not raise the justiciability issue in his opening brief, i.e., he did not address whether we had or should exercise any discretion to entertain his argument regarding the jurisdictional finding, considering that he does not challenge the jurisdictional findings against mother, until he filed his reply brief. " ' "[I]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.) Similarly, father did not raise the issue of whether there was a basis for removal of the children until filing his reply brief. We hold that defendant forfeited the latter issue by failing to raise it in his opening brief.

p. 1495 [dismissing appeal and finding that "[i]n any future dependency proceeding, a finding of jurisdiction must be based on current conditions"]; *L.O.*, *supra*, 67 Cal.App.5th at p. 237.)

Here, father does not challenge the jurisdictional findings against mother. Thus, even if we found that insufficient evidence supported the court's order sustaining the allegations against father, the juvenile court would still have had jurisdiction over minors and father.

Moreover, the court would still have had jurisdiction to enter the dispositional order bypassing father's reunification services. Furthermore, as discussed *post*, it is not reasonably probable that even absent the jurisdictional finding against father, the juvenile court would have granted him reunification services. Father fails to identify any other potential basis for us to exercise our discretion to address his claim, such as any prejudicial effect or any consequences beyond jurisdiction. Therefore, we decline to exercise our discretion to review whether sufficient evidence supported the court's finding sustaining the allegation against father.

B.      *Sufficiency of the Evidence*

Even assuming we exercised our discretion to review the court's finding sustaining the allegation against father, we would hold that sufficient evidence supported it.

" ' "In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted

or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " ' [Citations.]" (*L.O.*, *supra*, 67 Cal.App.5th at p. 238.)

Here, father had criminal convictions for robbery in 2012, illegal possession of an assault weapon in 2014, and attempted murder in 2022. Mother reported that father was involved with minors, who were each about 13 years of age at the time the court detained them, only until they were about two years old; father was then incarcerated for five years. When he got out of prison, "he then went right back in." She reported that he had never been there for them physically or mentally or provided support. Thus, there was evidence that father showed no real interest in providing minors a stable living environment in the past.

The department alleged father had failed to provide minors with a safe living environment. At the time they were taken into protective custody, minors were living with mother, who was actively using them in a gang-related, large-scale retail theft operation. Thus, there was evidence that at the time the department took minors into custody they were not living in a safe environment.

11

Father failed to appear at any of the hearings below, despite arrangements which would have allowed him to participate despite his incarceration. Father "reported he does not want to be present for court 'because it's a process' that he has to go through." Thus, father showed little real interest in minors during the proceedings below.

Father's latest criminal conviction was for attempted murder in 2022. Father was admitted to prison on July 27, 2022; his parole eligibility date was listed as January 2034. Thus, father was not likely to be able to provide minors a safe living environment in the future. Therefore, there was substantial evidence from which the court could conclude that father had never provided and would never be able to provide minors with a safe living environment.[6]

C.     *Bypass of Father's Reunification Services*

Father argues, assuming we reversed the allegations against him, we would also be required to reverse the order bypassing his reunification services. We disagree.

Here, " 'Even if we found no adequate evidentiary support for the juvenile court's findings with respect to [father's] conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights.' " (*Briana V.*, *supra*, 236 Cal.App.4th at p. 308; *Ashley B.*, *supra*, 202

---

[6] Father's contention that his mere request that minors be placed with the paternal aunt or paternal grandmother defeated the court's true finding on the allegations is unavailing. Father provides no evidence that a placement with either person would have been safe. (*In re J.F.* (2019) 39 Cal.App.5th 70, 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.]"].) In fact, mother reported that the paternal aunt had been to jail, which may have defeated any placement assessment.

Cal.App.4th at p. 979 ["We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result. [Citation.]".)

"[T]he juvenile court is not required to distinguish between a custodial and noncustodial parent when ordering or bypassing reunification services for a child in out-of-home placement." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1508 [noting that juvenile court should have bypassed non-offending, noncustodial parent's reunification services].) "In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; accord, *S.F.*, *supra*, 91 Cal.App.5th at pp. 719-720; *I.A.*, *supra*, 201 Cal.App.4th at p. 1492 ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established."].)

Although "a court may not deny reunification services based solely on a parent being incarcerated, [] section 361.5, subdivision (e)(1) expressly provides that a court may consider whether imprisonment may make reunification impossible within the statutory timelines." (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1192 (*Christopher L.*); *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1366 ["When a child cannot be returned to the parent within the statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a section 366.26 hearing."].)

13

There can be no reasonable basis to argue that reunification services are in minors' best interest where a parent's incarceration would fall well outside the maximum reunification period. (*Christopher L.*, *supra*, 56 Cal.App.5th at pp. 1190-1191, affd. *In re Christopher L.* (2022) 12 Cal.5th 1063; § 361.5, subd. (e)(1) [in considering whether to grant an incarcerated parent reunification services, the court should consider "the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations"].)

Here, father's latest criminal conviction was for attempted murder in 2022. Father was admitted to prison on July 27, 2022; his parole eligibility date was listed as January 2034. Thus, father would not only be incarcerated well beyond the maximum reunification period, but he would also be incarcerated well beyond the minors' attainment of majority. Therefore, it is not reasonably probable the juvenile court would have found reunification services were in minors' best interest.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
                                                            Acting P. J.

We concur:

CODRINGTON_____
                          J.

RAPHAEL_____
                          J.

14