Filed 5/30/13  In re M.J. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.J. et al., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. M.J., Defendant and Appellant. | A136443 (Solano County Super. Ct. Nos. J41469, J41470) |

Father appeals from the jurisdictional and dispositional orders declaring his thirteen-year-old daughter and five-year-old son dependent children and removing them from his custody. He contends there is no substantial evidence to support the orders and that the court abused its discretion in ordering supervised visitation. We affirm.

**Factual and Procedural History**

On May 15, 2012, the Solano County Health and Human Services Department (the department) filed a juvenile dependency petition alleging there was a substantial risk the children would suffer serious physical harm or illness as a result of the following allegation: "The father . . . abuses controlled substances including but not limited to marijuana, methamphetamine, and alcohol in the presence of the children. Additionally, the children have been exposed to the presence of potentially harmful items such as drug paraphernalia, baggies and the presence of an unknown substance, likely ecstasy, on the

1

bed where the [son] often sleeps. Such conditions endanger the physical and emotional health of the children."[1] The children were ordered detained on May 16. Daughter was allowed to continue living at a family friend's home with whom she had been living voluntarily since before the petition was filed. The son was placed in a foster home.

On June 14, 2012, the department submitted its jurisdictional/dispositional report. The report includes a criminal history for father that indicates he was arrested in January 2010 for driving under the influence (DUI) and possession of a controlled substance. He was sentenced to four days in jail and placed on probation. He was ordered to complete a nine-month first offender DUI program as a term of his probation, but as of the time of the filing of the report, he had not completed the program.

Mother told the social worker that she had been snorting methamphetamine for approximately two and a half years and began ingesting ecstasy in 2010. She sometimes used methamphetamine on a daily basis. She used ecstasy and drank beer occasionally. She denied smoking marijuana. She acknowledged that the older sibling found empty methamphetamine baggies in the laundry room of the home in 2011 and 2012 and that she left ecstasy pills on her bed but denied that she left the drug on her son's bed. Mother denied that there was any other drug paraphernalia around the home. She believed she could care for the children when under the influence of drugs and did not believe that the children were ever at risk of emotional or physical harm. She reported that father drank alcohol rarely and had not been drunk in several years. He began using methamphetamine because she used the drug. He kept the alcohol and marijuana locked in a shed outside of the home.

Father told the social worker that he had been smoking marijuana for four years. He denied using ecstasy and could not recall when he last used methamphetamine. He

---

[1] The petition also alleged mother abused controlled substances, that the parents have engaged in domestic violence, and that the children's older half-sibling was physically abused by father. The court sustained the allegation regarding mother's substance abuse but struck the remaining allegations regarding domestic violence and father's physical abuse of the sibling. Mother has not filed an appeal challenging the jurisdictional finding with respect to her drug abuse.

denied also being drunk in over two years but acknowledged that the children may have seen him drink alcohol. He reported that he keeps his alcohol and marijuana locked in a shed outside of the home and denied that his children have ever been exposed to drugs or drug paraphernalia. He acknowledged that he was not always aware when mother was using drugs but believed she was capable of caring for the children under the influence of drugs and did not believe the children were at risk of emotional or physical harm. He did not believe he had a drug abuse problem but felt that mother did.

Daughter denied knowing whether her father used methamphetamine. At the time of her detention, she reported that "her father has had a history of alcohol abuse [and] has relapsed for 'about the last year.' " She reported seeing him under the influence of alcohol and that he smokes " 'a lot of marijuana.' " She described her home as "chaotic" and reported that there was a lot of fighting in the home. She stated that "for these reasons she has asked her mom to leave her father" and that is "why she has continued to reside out of the home." When interviewed for the jurisdictional report, daughter denied ever seeing her father drink alcohol, but she knew that he did because she saw alcohol around the home. She had seen him smoke marijuana and had seen his pipes and bongs near the shed outside of the home. Daughter also did not know if her mother had used methamphetamine recently and had never witnessed her use drugs but found baggies filled with a white, salt-like substance in her room and found her to be "jumpy" at times.

The report indicated that on May 23, 2012, parents had been referred for substance abuse, counseling, and parenting services, but father had not engaged in any of the services to which he had been referred. Father takes "little responsibility" for his role in the problems in the home and instead blamed everyone else, including the older brother, mother, the department, and the police, for the problems. The social worker believed that father had to engage in services and gain insight into the problems in the home before it would be safe to return the children to his custody.

Prior to the contested jurisdictional hearing, the department filed a confidential addendum report. Attached to this report was father's hair strand drug test result from

3

July 24, which was positive for marijuana at 3.25 pg/mg, amphetamine at 616 pg/mg, and methamphetamine at 13,772 pg/mg.

At the hearing, the social worker testified that on July 24 she asked father to submit to drug testing by hair strand and urine sample, but he refused to supply a urine sample. She also testified that based on prior experience with drug test results, she believed that a positive hair strand test for methamphetamine at levels of over 13,000 pg/mg was "very high." She explained that a positive drug test by hair strand indicates drug use within 90 days of the date of the test.

After receiving the test results, the social worker referred father for a substance abuse assessment, and he had participated in the assessment. The substance abuse counselor recommended that father attend substance abuse treatment wait-list groups, Matrix substance abuse groups, and three NA/AA meetings per week. Father had begun participating in all of these services. The social worker believed the children remained at substantial risk of serious physical harm because of father's positive hair strand drug test for significant levels of methamphetamine and because he refused to comply with the urine drug test. She was also concerned about the risk that father's ongoing substance abuse posed to the children's safety given father's lengthy history of substance abuse and relapse.

The social worker indicated that she was less concerned about father's marijuana use since he had a cannabis card but also acknowledged that she did not know whether father had disclosed his substance abuse history to the physician who prescribed him marijuana and provided him with the cannabis card.

The paternal grandfather also testified at the hearing. He testified that in 1990 or 1991, he and father were arrested for drunk driving. After participating in substance abuse treatment for six months, father was sober for about 18 years. Although father began drinking again four years ago, he had not seen him noticeably intoxicated on alcohol or drugs during the last four years. Father had, however, acknowledged that "he was drinking and gambling."

After hearing closing arguments by counsel, the court found allegations regarding parents' substance abuse to be true by a preponderance of the evidence. With regard to father's substance abuse, the court commented: "I realize dad thinks he's got this somewhat under control, but if it leads to a situation where you got multiple baggies of crank in the house, no matter who left them there, because you're both [responsible] to protect the kids. We've had too many cases where a kid picks up a bag of crank. . . . Everybody's got to be sober enough to protect [the] kids from these sorts of things."

On August 15, the juvenile court held the continued contested disposition hearing. The court found that removal of the children from both of the parents' custody was supported by clear and convincing evidence. The court provided father with family reunification services, including supervised visitation.

## Discussion

1. **Jurisdictional Order**

Father contends that there was no substantial evidence supporting the juvenile court's finding under section 300, subdivision (b) that he has a substance abuse problem or that his use of methamphetamine or alcohol poses a substantial risk of harm to his children. Father acknowledges that substantial evidence supports the jurisdictional order based on the uncontested findings of mother's substance abuse, and that therefore any decision we might render on the allegations involving him will not result in a reversal of the court's jurisdictional order. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["[I]t is commonly said that a jurisdictional finding involving one parent is ' "good against both." ' "].) He argues, however, that we should exercise our discretion to address his challenge because the erroneous finding regarding his conduct "may gravely affect [him] and/or his children" in the future. Among other things, he argues that if the court had dismissed the allegations against him, he could be deemed a "nonoffending" parent for purposes of custody and placement under section 361, subdivision (c).[2] Because section

---

[2] Section 361, subdivision (c) provides: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and

5

361, subdivision (c) treats offending and non-offending custodial parents somewhat differently during the dispositional phase of dependency proceedings, we will consider father's challenge to the jurisdictional order.

In reviewing the jurisdictional findings of the juvenile court, "we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321.) If supported by substantial evidence, the judgment or findings must be upheld, even though substantial evidence to the contrary may also exist and the juvenile court might have reached a different conclusion had it determined the facts and weighed credibility differently. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 228; *In re Tracy Z*. (1987) 195 Cal.App.3d 107, 113.)

Initially, father argues that there is no evidence that he had a problem with substance abuse. While he acknowledges using alcohol, marijuana and

---

convincing evidence of any of the following circumstances listed in paragraphs (1) to (5) . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

methamphetamine, he denies abusing them. Substantial evidence, however, supports the court's factual finding that he had a substance abuse problem. The record establishes that about four years ago, after a substantial period of sobriety, father began using methamphetamine, alcohol and marijuana on a regular basis. During that time he suffered a DUI conviction, but failed to complete the terms of his court-ordered treatment program. The paternal grandfather testified that he knew father had started drinking again because about that time "there were numerous family problems. [He] was getting calls from [mother] and having discussions with [father] where he acknowledged that he was drinking and gambling." The counselor at the drug treatment program to which the department referred father apparently agreed that his use was problematic and recommended treatment.

Father also argues that there is no substantial evidence to support the finding that his substance abuse puts the children at substantial risk for serious physical harm. The social worker testified, however, that father's drug abuse negatively impacts his decisionmaking and places the children's safety at risk. Contrary to father's argument, the record contains numerous examples of dangerous behavior that, as confirmed by the grandfather, seem to correspond with the end of father's sobriety.

Despite knowing that mother was abusing methamphetamines, father believed that she "could normally care for the children even if she was under the influence of drugs." He told the social worker that he "did have concerns about [mother] driving with the children while under the influence of drugs" but that she would call him "when she felt she could not drive." Although he claimed his children have never been exposed to drug paraphernalia or drugs in his home, the mother acknowledged using drugs in the home and that she had left baggies and drugs where they were accessible to the children. Allowing his children to remain in the care of their mother, despite his clear knowledge of her drug abuse, places his children at substantial risk of physical harm.

Likewise, although the court did not sustain the allegations in the complaint regarding father's domestic violence towards mother and physical abuse of the children's older sibling, that evidence nonetheless supports the social worker's opinion that father's

7

drug abuse is placing the children at risk. Evidence was presented that father was arrested for domestic violence in 2009, after he began drinking again. The social worker's report shows that two referrals were made to the department prior to the filing of the present petition as a result of the fighting between mother, father and the older sibling. The report indicates that despite living in the neighborhood for 10 years, the problems had begun within the last eight months. Finally, when initially interviewed by the social worker, daughter reported that the situation in the home was "chaotic" and that there was "a lot of 'fighting' in the home." She reported that because of her father's substance abuse, she asked her mother to leave her father and moved out of the home. Taken together, this evidence further supports the trial court's finding that father's drug abuse places the children at risk of serious physical harm.

Contrary to father's argument, the fact that mother moved out of the home before the jurisdictional hearing does not eliminate the current danger his drug abuse poses to the children. As demonstrated by the above evidence, father's drug abuse compromises his judgment. His continuing denial of a drug problem may reasonably be taken to reflect that his judgment remains compromised and his children remain at risk.

2.      **Dispositional Order**

A child may not be removed from a parent or guardian unless there is clear and convincing evidence of "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) In determining whether a child may be safely maintained in the parent's physical custody, the court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) A trial court's removal order is reviewed under the substantial evidence standard of review, notwithstanding the evidentiary standard used at trial. (*In re Heather A., supra*, 52 Cal.App.4th at p. 193; see also *In re E.B.* (2010) 184 Cal.App.4th 568, 578 ["The clear and convincing standard was

adopted to guide the trial court; it is not a standard for appellate review. [Citation.] The substantial evidence rule applies no matter what the standard of proof at trial."].) In this case, father's drug abuse in conjunction with his lack of insight as to the impact his drug use has on his children, as detailed above, constitutes substantial evidence supporting the removal order.[3]

## Disposition

The jurisdictional and dispositional orders are affirmed.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

---

[3] Because we have upheld the jurisdictional findings and the removal order, we need not consider father's remaining argument that as a "non-offending" parent it was an abuse of discretion to impose supervised visitation.

9