Filed 6/4/15  In re A.S. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | B259156 (Los Angeles County Super. Ct. No. DK04732) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.S.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Klaif, Juvenile Court Referee.  Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Mother A.S. challenges the juvenile court's order taking jurisdiction over her 17-year-old son Alexander. The court sustained allegations that mother physically abused Alexander and that she suffered from emotional problems including excessive anger and aggression. Alexander's father was unable to care for him, and mother did not want to reunify with him. We conclude jurisdiction was warranted and affirm.

**FACTS AND PROCEDURE**

### 1. Sustained Allegations

The juvenile court found that father, who resides in Germany, could not care for Alexander, and that finding is not challenged on appeal.

With respect to mother, the court sustained the following allegations: Mother physically abused Alexander, which was excessive and caused unreasonable pain and suffering. Alexander did not want to reside with mother. Mother has emotional problems making her unable to provide regular care and supervision. She suffered from mental and emotional problems, exhibiting frequent mood swings and would become angry and aggressive.

### 2. Alexander's Version

Alexander came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) after mother was arrested for child abuse. The criminal court issued a restraining order, preventing mother from having contact with Alexander. Alexander reported that mother stabbed him with a screw driver, a box cutter, and a carpet knife. Alexander also reported mother pushed him causing him to fall into a drum set and scratch his eye. A social worker observed scars on Alexander's arms.

Alexander described mother as a member of a cult and claimed she believed aliens were taking over the government. (Father reported that he believed mother suffered from a mental disorder, but the only rationale he gave was mother's failure to inform him of her pregnancy with Alexander.) Alexander believed that mother was overly controlling.

Alexander reported that he did not want any contact with mother. Alexander wanted to live in foster care, and the DCFS concluded that mother was not able to provide a safe home.

### 3. *Mother's Version*

Mother vigorously maintained that Alexander, who was larger than her, always was the aggressor, and that her conduct was in self-defense. But mother acknowledged she "picked up things to defend herself." For example, mother said that Alexander once lunged toward a screwdriver she was holding. Mother's parents and several friends submitted letters in her support, emphasizing her efforts to care for her son and to love and cherish him. One writer indicated that Alexander told him he intended to use the dependency system as a bargaining chip with mother. None of mother's friends or family observed mother verbally or physically abuse Alexander.

When Alexander was detained, mother said that she did not want custody of him. Mother did not feel safe with Alexander in the home.

At the jurisdictional hearing, mother's counsel argued mother was the victim not the abuser. She argued that Alexander had been detained in four placements since he was removed from mother's custody. Counsel argued that his first foster parent was upset because Alexander did not follow the rules. "And he has been replaced a few times, not just once or twice."

### 4. *Court Findings*

The court concluded that although Alexander was rebellious, mother had an obligation to refrain from using violence against him. It sustained the allegations as described above and concluded jurisdiction was warranted.

### 5. *Alexander's Postdetention Placements*

Prior to the jurisdictional hearing, a DCFS report detailed Alexander's inappropriate conduct during his first foster placement. Specifically, Alexander acted inappropriately with his girlfriend by grabbing her breasts in public. Alexander rebelled when his foster parents prevented him from being alone with his girlfriend.

3

Alexander refused to return to his foster home unless his foster parents allowed him to see his girlfriend whenever he wanted.

Subsequent to the jurisdictional hearing, DCFS filed a report indicating that Alexander had difficulty in other foster care placements. He accused one foster mother of physical abuse, but the accusation was unfounded. When placed in an emergency shelter he was "rough-housing" and "belittling" other children in the home. Alexander also filed a complaint against his group home, which was unsubstantiated. In his next placement, Alexander was "defiant, argumentative, verbally and physically aggressive towards others." Alexander shoved a staff person, who was attempting to implement house rules.

At the same time it detailed Alexander's postdetention placements, DCFS reported that mother reiterated that she did not want to reunify with Alexander.

## DISCUSSION

Mother argues that the jurisdictional order should be reversed because DCFS failed to timely provide information regarding Alexander's difficulty in his postdetention placements and such information was relevant to her argument that he was the aggressor. Mother also argues the finding that she suffered from mental and emotional problems is not supported by substantial evidence. Mother seeks reversal of the jurisdictional order and remand for a new jurisdictional hearing.

We conclude that jurisdiction was necessary even if, as mother argues, Alexander was the aggressor. We therefore need not consider mother's specific challenges, but nevertheless explain why they lack merit.

"[T]he juvenile court takes jurisdiction over children, not parents." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) "The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in [Welfare and Institutions Code] section 300 has been demonstrated." (*Ibid*.) When a single finding is supported by the evidence the court may decline to consider other jurisdictional findings. (*Id*. at p. 1492.)

4

Mother does not dispute that jurisdiction was warranted if she physically abused Alexander. Her argument is that if the court had considered all of the evidence including the postjurisdictional evidence it would have concluded Alexander was the aggressor.

However, even assuming that Alexander was the aggressor, jurisdiction was necessary in this case. The dependency system does not require a parent's conduct be blameworthy. (*In re R.T.* (2015) 235 Cal.App.4th 795, 797.) "When a child thereby faces a substantial risk of serious physical harm, a parent's inability to supervise or protect a child is enough by itself to invoke the juvenile court's dependency jurisdiction." (*Ibid.*) Here mother admitted that she could not supervise or protect Alexander. She was afraid to live with him, did not want custody of him, and did not want to reunify with him. Crediting mother's version of events indicated that Alexander was an incorrigible teen and required support beyond what mother could provide. Under that scenario, jurisdiction was warranted. (*Ibid.*)

Moreover, mother's specific arguments lack merit. Even if DCFS should have presented information regarding Alexander's difficulty in his placements sooner, mother was privy to this information and could have called witnesses to testify at the jurisdictional hearing. Her counsel argued that Alexander was in four placements since his detention. Counsel further argued that he had to move because of inappropriate conduct with his girlfriend and the failure to follow house rules. Mother fails to show that a new jurisdictional hearing is required for the court to consider evidence mother could have but did not develop at the jurisdictional hearing. In any event, the court recognized that Alexander was rebellious but concluded that mother— as the parent—was required to refrain from responding to his conduct with violence. Nothing in the postjurisdictional report undermines that conclusion.

Finally, ample evidence supported the allegation that mother suffered from emotional problems causing her to anger easily and become aggressive. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452 [reviewing juvenile court's jurisdictional findings for substantial evidence].) The evidence that mother repeatedly and regularly

5

responded to Alexander with physical violence supported the allegation that she angered quickly and was aggressive. There was evidence this placed Alexander at risk of harm as he reported and a social worker observed scars from mother's conduct. As respondent argues, a mother who "physically abuses her child by repeatedly stabbing him with a box cutter, stabbing the child with a screw driver, and violently pushing the child, suffers from a mental and emotional problem" and may benefit from therapy.

## DISPOSITION

The juvenile court's jurisdictional order is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

6