Filed 5/3/23  In re G.R.  CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re G.R. et al., Persons Coming Under the Juvenile Court Law. | |
| | D081210 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J521096) |
| Plaintiff and Respondent, | |
| v. | |
| C.R., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Dismissed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel and Lisa M. Maldonado, Chief Deputy County Counsel, for Plaintiff and Respondent.

C.R. (Father) appeals a jurisdictional and dispositional order in the dependency proceeding pertaining to his son, G.R. and daughter, C.R. (collectively, the children).  He argues the allegations against him do not support the juvenile court's jurisdictional finding under Welfare and Institutions Code[1] section 300, subdivision (b).  He does not challenge the finding based on allegations against the children's mother, E.M. (Mother),[2] and concedes this renders his appeal moot, but requests that this court exercise our discretion to reach the merits.  The Agency contends we should decline to do so.  Agreeing with the Agency, we conclude discretionary review is not warranted in this case and dismiss Father's appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, the Agency filed dependency petitions on behalf of the children asserting jurisdiction based on section 300, subdivision (b).  The petitions alleged that C.R. tested presumptively positive for amphetamine at birth in August 2022.  Mother declined to be tested and denied drug use while pregnant.  C.R.'s confirmatory urine test and umbilical cord test were positive for methamphetamines six days later.  At a hospital visit 10 days after C.R.'s birth, Father presented "with bloodshot eyes, was sweating profusely in an air-conditioned environment, and was agitated.  The parents were asked to assist in collecting urine samples from [the children], and provided a urine sample for [G.R.] that appeared to be heavily diluted, and

---

[1]    All further section references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    Mother is not a party to this appeal.

were unable to hold [C.R.] in a manner that would allow her urine to be collected."[3]  It was noted that "[t]he parents continue to deny substance use."

Attached to the Agency's September 8 detention report was a doctor's progress notes stating that C.R.'s urine and umbilical cord samples were "definitive evidence that mother ingested methamphetamine on multiple occasions during her pregnancy including around the time of delivery." Although Mother declined to drug test at C.R.'s birth, she agreed nine days later and her results came back negative.  Father refused to test.

When Mother and Father were informed that C.R.'s screen was confirmatory positive for methamphetamines, they were "frustrated, as evidenced by rapid speech and aggressive tone denying any history or current use of methamphetamine."  Mother's explanation was that she was walking on the boardwalk in Los Angeles and she was "smelling and inhaling something that made her feel bad," then she gave birth later that day.

As for the urine samples, G.R. was left alone with Father in the exam room for 5-10 minutes, and when staff returned, Father said that G.R. had gone to the bathroom.  G.R.'s urine was "clear as water," raising "significant concerns that the specimen was tampered with by father."  Additionally, they were unable to collect a sample from C.R. because "her urine kept leaking out of the bag, despite continual instructions to the parents for how to hold her to prevent urine leakage."  After being there for two hours, the family was told they could leave but to follow up the next day, which they did not do.

Mother claimed that when they took the children back to the hospital to be examined after C.R.'s birth, "they were in a small room with many people, which is why the father was sweating."  She recalled it being a hot day, so she hydrated G.R. and the hospital staff gave him water and apple

---

[3]     G.R. was one year and eight months old at this time.

juice. Father likewise stated that hospital staff gave G.R. water and juice to help him urinate, and the staff never indicated they did not have enough urine from C.R. Hospital staff confirmed giving G.R. juice, but determined he would have had to consume four times the amount given to him within the hour before the appointment to have a diluted sample.

Mother and Father both tested positive for marijuana on multiple dates in September and October, but did not have any positive results for amphetamine or methamphetamine. By the October 31 pretrial report, they were participating in drug treatment groups and parenting classes. But they still had no explanation for C.R.'s positive test results and Mother continued to deny methamphetamine use.

Although the parents were able to test negative for illegal substances and engaged in drug treatment and parenting classes, the Agency remained worried due to the age of the children and the fact that the parents continued to deny drug use in the face of the strong evidence provided by C.R.'s urine and cord samples. There was also the lingering concern that someone had tampered with G.R.'s urine, as well as the incidents suggesting Father was under the influence of illegal substances based on his behavior and refusal to drug test. The Agency noted he recently declined to submit a hair follicle test despite knowing that if it was negative for any illicit substances, it would eliminate many concerns regarding his substance abuse.

At the contested jurisdiction and disposition hearing, the Agency asked the court to look at the totality of the circumstances including C.R.'s positive test at birth, the fact that neither Mother nor Father had any plausible innocent explanation, Mother's refusal to test at C.R.'s birth, concern with Father's behavior and refusal to test, and G.R.'s diluted urine sample. It acknowledged the parents seemed to have turned a corner and were now

cooperating and testing negative, but argued that the protective issues still existed.

In issuing its ruling, the court referred to the doctor's progress note indicating that C.R.'s umbilical cord test was "definitive evidence that mother ingested methamphetamine," and took issue with Mother's explanation of walking down the boardwalk and smelling methamphetamine to account for the test results. It addressed the positive tests for marijuana, acknowledging that it was not illegal, and that Mother and Father were gaining insight into the effect of that or any other drugs. But relying on "the confirmed positive for methamphetamine and the definitive expert information related to the presence of methamphetamine," the court made a true finding by a preponderance of the evidence that the children fell within the protections of section 300, subdivision (b). Based on the totality of the circumstances, however, the court also found that placing the children with Mother and Father would not be detrimental, and did so under a family maintenance plan that required them to complete two drug tests per month and participate in parenting classes.

DISCUSSION

Father argues that at the time of the hearing, he did not pose a risk of harm to the children and the jurisdictional finding under section 300, subdivision (b) should be reversed as to him. We conclude Father has not shown this court can grant him effective relief, and discretionary review of his moot appeal is not warranted.

The California Supreme Court recently addressed mootness in the dependency context in *In re D.P.* (2023) 14 Cal.5th 266, explaining that an appeal is moot when the reviewing court cannot provide effective relief if it should decide in favor of appellant. (*Id.* at p. 276.) "For relief to be 'effective,'

5

two requirements must be met. First, the [appellant] must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the [appellant] seeks." (*Id.* at p. 276.) Where appellant "has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings," the appeal is moot. (*Id.* at p. 273.)

Particularly relevant here, "where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot." (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.) That is because "the principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [Citation], means that ' "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." ' " (*Ibid.*)

But a case is not moot where a jurisdictional finding forms the basis for an order that continues to impact a parent's rights. (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.) "For example, a case is not moot where a jurisdictional finding affects parental custody rights [Citation], curtails a parent's contact with his or her child [Citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent [Citation]." (*Id.* at pp. 277–278.) "Because reversal of the jurisdictional finding calls into question the validity of orders based on the finding, review of the jurisdictional finding can grant the parent effective relief." (*Id.* at p. 277.)

Stigma resulting from the challenged jurisdictional finding is generally insufficient to require review of an appeal in the juvenile context. "The stigma must be paired with some effect on the [parent's] legal status that is capable of being redressed by a favorable court decision" to avoid mootness. (*In re D.P.*, *supra*, 14 Cal.5th at pp. 276–278.) Similarly, speculative

6

concerns of the possibility that a jurisdictional finding will have negative consequences for a parent in a hypothetical future proceeding or other context is not enough to avoid mootness. (*Id.* at pp. 277–278.)

Even when a case is moot, an appellate court has discretion to decide the merits of the dispute. (*In re D.P.*, *supra*, 14 Cal.5th at p. 282.) Whether to exercise that discretion is decided on a case-by-case basis and the overarching goals of the dependency system—safeguarding children with a focus on preserving the family and the child's well-being—are the ultimate guides in in making that determination. (*Id.* at p. 286.)

The high court in *In re D.P.* laid out a nonexhaustive list of factors appellate courts may consider, including "whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction." ' " (*In re D.P.*, *supra*, 14 Cal.5th at p. 285.) For example, a prior jurisdictional finding may impact the child's placement or subsequent family law proceedings. (*Ibid.*) While speculative concerns about possible future effects of a jurisdictional finding is not enough to avoid mootness, it might provide a basis for an appellate court to exercise its discretion to consider the merits of a moot appeal. (*Id.* at p. 283.)

"The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. [Citations.] Though stigma alone will not sustain an appeal, a court may consider the nature of the allegations against the parent when deciding whether discretionary review is proper. The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*In re D.P.*, *supra*, 14 Cal.5th at pp. 285–286.)

Why the appeal became moot is also a relevant consideration. "Where a case is moot because one parent appealed and not the other, but the findings against the parent who has appealed are based on more serious conduct, it may serve the interest of justice to review the parent's appeal. . . . Moreover, where . . . the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate. . . . It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders. [Citations.] Principles of fairness may thus favor discretionary review of cases rendered moot by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal." (*In re D.P.*, *supra*, 14 Cal.5th at p. 286.)

Father urges us to consider the merits of his appeal because the allegations against him have "affected the juvenile court[']s dispositional findings and orders, which father also appealed, in that it declared the children dependents of the court." We note that this amounts to argument that his appeal is not moot, as opposed to a reason for us to exercise our discretion to consider a moot appeal. (*In re D.P.*, *supra*, 14 Cal.5th at p. 283 ["where a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"].)

Nonetheless, we disagree that the allegations regarding Father affected the dispositional order declaring the children dependents. In making its jurisdictional finding that the children came within section 300, subdivision (b)(1), it is clear the court was primarily concerned with C.R.'s umbilical cord testing positive for methamphetamine, referring to the doctor's report as "definitive evidence" of Mother's methamphetamine use. The court then

8

made its dispositional order based on that finding. In other words, even without the allegations against Father, the court would have still declared the children dependents of the court based on the allegations against Mother. As such, Father "has not demonstrated a specific legal or practical consequence that would be avoided," if the allegations against him were stricken.[4] (*In re D.P.*, *supra*, 14 Cal.5th at p. 273.) Thus, Father's appeal is moot.

Father argues we should nonetheless reach the merits because "the true finding on the petition, will certainly impact future dependency proceedings or any future hearings in Family court, because the family now has both a referral history and a legal history with both the juvenile court and the family Court." But even so, the referral and legal history would not disappear, and the substance of the allegations regarding Father's conduct would be available in any future dependency or family court proceeding,

---

[4] Notably, the court did not remove the children from Father, but rather placed them with both Mother and Father on a family maintenance plan. (Compare with *In re J.N.* (2021) 62 Cal.App.5th 767, 774 [where father challenged jurisdictional findings against him but did not challenge findings against mother, considering merits of appeal because jurisdictional findings against him served as the basis for dispositional order removing child from his custody and placing child with mother].) It required them both to comply with two drug tests per month and participate in parenting class, as well as any other condition that the Agency deemed necessary to maintain the safety of the children. A dispositional order may reach both parents, including a nonoffending parent, as long as it is " 'reasonable' and 'designed to eliminate [the] conditions that led to the court's [still valid jurisdictional] finding.' [Citations.]" (*In re D.M.* (2015) 242 Cal.App.4th 634, 639.) Father does not challenge these portions of the dispositional order. (Compare with *ibid.* [considering merits of appeal where mother challenged jurisdictional findings against her but did not challenge findings against father, because juvenile court's finding that mother intentionally inflicted physical harm on child was prejudicial to mother since it was the basis for the portion of the dispositional order requiring her to attend parent education and individual counseling].)

regardless of any determination on our part as to whether such allegations are sufficient to support juvenile court jurisdiction under section 300, subdivision (b).

Father fails to suggest any way in which the allegations against him could actually affect a future dependency or family law proceeding. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1495 [noting that in any future dependency proceeding, a finding of jurisdiction must be based on current conditions], overruled in part on different ground.) And any concerns of this nature would be highly speculative given that the allegations against Father were not particularly pernicious, stigmatizing, or egregious. (Compare with *In re D.M.*, *supra*, 242 Cal.App.4th at p. 639 [considering merits of appeal where juvenile court's finding that mother intentionally inflicted physical harm on child was prejudicial to mother because a finding that a parent intentionally hurt her child has the potential to impact future dependency proceedings]; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [considering merits of appeal where jurisdictional finding could be prejudicial to mother if she were involved in future child dependency proceedings because the allegations supporting the challenged ground for jurisdiction involved mother trying to drown her seven-year-old child in a fountain at a public park]; *In re D.P.*, *supra*, 14 Cal.5th at pp. 285–286 ["The exercise of discretionary review may . . . be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct"].)

Father argues that declining to consider his moot appeal would incentivize noncompliance where the court only placed the children with Mother and Father because Father participated in services, and review would be available if he did not. Initially, we disagree that the court made its placement decision based on Father's compliance; rather, it was based on the

totality of the circumstances because it appeared both Mother and Father were gaining insight. Moreover, Father's argument would make sense only if his compliance (and the children's placement with Mother and Father) was what rendered his challenge to the jurisdictional finding moot. (*In re D.P.*, *supra*, 14 Cal.5th at p. 286 [where "the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate"].) For example, in *D.P.*, the father's appeal was rendered moot because the parents completed their case plan in a timely fashion, which led to termination of the juvenile court's jurisdiction during the pendency of the father's appeal. (*Ibid.*) Here, Father's appeal is moot because of the unchallenged jurisdictional finding due to Mother's conduct— and this would remain true whether or not Father participated in services.

For argument sake, if the court did remove the children, there would be an order affecting Father's parental rights, which might have lent itself to an argument that Father's appeal is not moot in the first place. (*In re D.P.*, *supra*, 14 Cal.5th at p. 276 ["a case is not moot where a jurisdictional finding affects parental custody rights"].) But that argument would fail because, as with the order declaring the children dependents, the removal order would have been based on the unchallenged jurisdictional finding due to Mother's conduct, which again, was the court's primary concern. (See *id.* at p. 283 ["where a jurisdictional finding '*serves as the basis* for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"], italics added.) Thus, Father has not demonstrated that a hypothetical removal order would have been avoided without the allegations against him. (*Id.* at p. 273 [where appellant "has not demonstrated a specific legal or practical consequence that would be avoided," the appeal is moot].)

11

In sum, Father has identified, and we otherwise see, no meaningful prejudice or potential consequences we would dispel by reaching the merits of Father's moot appeal. We therefore decline to exercise our discretion to review it.

## DISPOSITION

The appeal is dismissed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

KELETY, J.