Filed 11/20/15  In re B.N. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.N., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E062627 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1400011) |
| v. | OPINION |
| A.N. et al., | |
| Objectors and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Dismissed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Objectors and Appellants.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman and Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

Appellants A.N., T.N., and S.N. appeal from the juvenile court's denial of their Welfare and Institutions Code[1] section 388 petition requesting to participate in the section 366.26 hearing scheduled for their brother, B.N. (the child). We dismiss the appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

The parents of the child, S.N. (father) and A.N. (mother), were married and decided to adopt children. They adopted A.N. from China in 2005. She was 11 months old at the time.[2] Mother later became pregnant and gave birth to twin girls, T.N. and H.N. (the twins). Subsequently, the parents were contacted about the child, who was available for adoption from China. They received the child into their home on March 4, 2013.

On January 3, 2014, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition on behalf of the child and his sisters (the children). A.N. was nine years old at the time, the twins were three years old, and the child was 3 years old, as well. The petition alleged that the child came within the provisions of section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (e) (severe physical abuse of a child under five). The petition also alleged that A.N., T.N., and H.N. (the girls) came within the provisions of section 300, subdivisions (b) and (j)

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] The parents of the child filed an appeal under case No. E063302. Pursuant to DPSS's request filed on March 19, 2015, we took judicial notice of the record that case.

2

(abuse of sibling). The petition included the allegation that, while in the care and custody of the parents, the child sustained multiple fractures to various parts of his body, including his left and right clavicle, upper left humerus bone, and lower left humerus bone. The parents had no explanation for the injuries. The petition alleged that the girls were at risk of similar harm.

In the detention report, the social worker reported that DPSS received a referral on December 30, 2013, regarding the child. Father brought the child to the emergency room, and the child was initially diagnosed with a fractured left arm. The fracture was highly suggestive of non-accidental trauma. The police were called, and an officer spoke with the emergency room doctor, Victoria Shooks, who said that a skeletal survey was done and several fractures were noted. Some fractures were a few weeks old. Dr. Shooks and a radiologist agreed that the fractures were particularly indicative of abuse.

On January 6, 2014, a juvenile court detained the children in foster care. The court ordered visitation twice a week.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on January 23, 2014, and recommended that the children be declared dependents of the court, and that reunification services not be provided to either parent, pursuant to section 361.5, subdivision (b)(5) and (b)(6). The social worker further reported that the child and A.N. were placed with the paternal grandparents, and the twins were placed with a paternal uncle and aunt.

3

The social worker filed an amended petition on April 17, 2014. The amended petition deleted the allegations under section 300, subdivisions (a) and (b). At a hearing on that date, the court found that the child came within section 300, subdivision (e), and declared him a dependent of the court. It also denied reunification services to the parents as to the child pursuant to section 361.5, subdivision (b)(5) and (b)(6), and set a section 366.26 hearing for September 2, 2014. Regarding the twins, the court found true the allegations under section 300, subdivision (j), and declared them dependents of the court. The court removed them from the parents' custody and ordered the parents to participate in reunification services. The parties reached an agreement to have A.N. returned to the parents. The court ordered her returned to the parents' custody, subject to DPSS supervision, on a family maintenance plan.

*Status Review Report*

On August 20, 2014, the social worker filed a combined report pursuant to sections 366.26, 366.3, 366.21, and 364. The social worker recommended that the parents be offered an additional six months of family maintenance services as to A.N. As to the twins, she recommended that they be returned to the parents' custody under a family maintenance plan. Regarding the child, the social worker recommended that parental rights be terminated. The social worker reported that the twins had been having overnight visits with the parents, and that the family consistently visited the child once a month. They enjoyed the visits, and the visits went well. The social worker reported that the children appeared to have a significant bond with the parents and each other. The

4

social worker further reported that the child had adjusted well to his prospective adoptive home, where he had been placed since April 23, 2014.  He appeared happy to see his family at visits, but he did not cry with the transition back to his prospective adoptive family after visits.

The social worker filed an addendum report on August 23, 2014 and attached a preliminary adoption assessment report.  The social worker described the prospective adoptive parents as mature and stable.  The child was attached to them, sought their attention and affection, and was easily comforted by them.  The prospective adoptive parents were also attached to him.  They were committed to raising the child in a safe, loving environment.

At the six-month review hearing regarding T.N. and H.N., the court returned the twins to the parents' custody, under a plan of family maintenance.

*Section 388 Petition*

On November 20, 2014, the girls filed a section 388 petition, asking the court to grant them standing to participate in the section 366.26 hearing scheduled for the child. They opposed the adoption of the child and wanted to be heard by the court.  The court denied the petition, stating that there had been no showing that the request would be in the child's best interest.

*Section 366.26 Hearing*

The court held a contested section 366.26 hearing on January 16, 2015.  Counsel for the parents requested that A.N. be permitted to testify regarding her relationship with

5

the child.  However, the child's counsel objected, as did county counsel.  The court found that there was no doubt the child had a close relationship with A.N., as well as the twins.  Since there was no indication that they were not close, the court decided not to permit A.N. to testify.  The social worker testified at the hearing and said that the parents had visits with the child once a month.  The last visit she supervised was on December 18, 2014.  The visit went well.  The child was happy to see the girls and the parents.  He appeared to have more of an affinity for A.N.  The children read with each other and played with toys, and the parents brought snacks.  The social worker testified that the child appeared to be happy during the visits, but was fine when the visit ended.  He said goodbye to everyone.  She testified that at the end of visits in general, the child was not particularly sad.  Mother also testified that the child had pet names for his sisters.

After hearing testimony and closing arguments, the court found it likely that the child was going to be adopted.  The court also found that there was a sufficient basis for terminating parental rights.  The court noted that two exceptions to the termination of parental rights had been argued—the sibling relationship exception and the parental bond exception.  It noted that the parents may have a bond, but it was clear that such bond did not outweigh the benefits of adoption.  The court further found that the siblings had a close relationship.  However, the child was clearly in a very good home, where he was free from abuse, and where he was loved and cherished.  Thus, the court found that neither exception applied and that adoption was in the child's best interest.  The court terminated parental rights and set adoption as the permanent plan.

ANALYSIS

The Issue on Appeal is Moot

The girls appeal from the juvenile court's denial of their section 388 petition requesting the court to grant them standing to participate in the section 366.26 hearing. We conclude that this appeal is moot.

The girls argue that the court abused its discretion in denying their section 388, subdivision (b) petition without an evidentiary hearing. Section 388, subdivision (b), provides that "a child . . . may petition the court to assert a relationship as a sibling related by blood, adoption, or affinity . . . to a child who is . . . a dependent of the juvenile court, and may request . . . consideration when determining or implementing a case plan or permanent plan for the dependent child." The girls assert that "[t]he point of the instant appeal is [their] wish to participate in the section 366.26 hearing for their brother, [the child]." Respondent points out that the subject hearing has already taken place. As such, there is no effective relief this court can grant, and the appeal must be dismissed. In their reply brief, the girls acknowledge that the parents have appealed the decision severing their parental rights to the child. The girls conclude that, should the parents prevail, the juvenile court would likely conduct another section 366.26 hearing, at which time they could participate. Thus, they assert that their appeal is not moot until this court affirms the judgment of the juvenile court.

"An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant

7

effective relief." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.) "When the court cannot grant *effective* relief to the parties to an appeal, the appeal must be dismissed." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 (*I.A.*).) Here, as respondent points out, the section 366.26 hearing has already been held. Moreover, we have reviewed the parents' appeal and affirm the juvenile court's order terminating parental rights. (See *In re B.N.* (Oct. 30, 2015, E063302) [nonpub. opn.].) As such, the issue raised in the instant appeal has been rendered moot, and the appeal must be dismissed.

We further note that the girls were not prejudiced by the court's denial of their section 388 petition. They are apparently claiming that, by denying them the opportunity to participate in the section 366.26 hearing, "the court prejudged and eliminated a later invocation and application of the sibling exception to adoption." To the contrary, the record reflects that the sibling relationship exception to the termination of parental rights was argued at the section 366.26 hearing. The social worker, father, and mother all testified as to what the child and the girls did together at visits, how they interacted, the nicknames the child called them, and how he reacted at the end of visits. The court expressly discussed the application of the sibling relationship exception. It found that the siblings had a close relationship, but noted that, "even with that sibling relationship, the Court is still called to weigh the benefit of that relationship against [the child's] permanence through adoption." The court concluded that the sibling relationship exception did not apply, and that adoption was in the child's best interest.

8

Ultimately, since the section 366.26 hearing has passed, and the court cannot grant the relief requested, the appeal is moot.

DISPOSITION

The appeal is dismissed as moot.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

McKINSTER
J.

KING
J.