Filed 12/31/25  L.B. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| L.B., | |
| Petitioner, | E087144 |
| v. | (Super.Ct.No. DPRI2500352) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Malvina Ovanezova, Temporary Judge.  (Pursuant to Cal. Const., art VI, §21.)  Petition denied.

Thomas C. Steelman for Petitioner.

No appearance for Respondent.

Minh C. Tran, County Counsel, Jamila T. Purnell and Catherine E. Rupp, Deputy County Counsel, for Real Party in Interest.

1

The juvenile court found true allegations pertaining to defendant and appellant L.B. (father); removed L.B. (minor, born September 2013) from parents' custody;[1] bypassed reunification services to father pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(12) (parent convicted of a violent felony),[2] and set the section 366.26 hearing.  By petition for extraordinary writ, father contends insufficient evidence supports the jurisdictional finding against him, and that the court erred in bypassing his reunification services.[3]  We deny the petition.

---

[1]  L.B. is the father of minor.  The proceedings below also involved minor D.S., who has a different father.  The latter minor, her father, and mother are not parties to this proceeding.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]  In their response, real party in interest Riverside County Department of Public Social Services (the department) asserts that father also contends that insufficient evidence supports the court's decision not to place minor with father; however, we discern no such issue raised in father's petition.  At the very least, there is no such argument under a separate heading.  The petition must include a summary of the grounds of the petition, the relief requested, and be accompanied by a memorandum.  (Cal. Rules of Court, rule 8.452(a)(1)(D), (E) & (a)(3).)  "The memorandum must state each point under a separate heading or subheading summarizing the point and support each point by argument and citation of authority."  (Cal. Rules of Court, rule 8.452(b)(2).)  "The purpose of requiring . . . coherent arguments in appellate briefs is 'to lighten the labors of the appellate [courts] by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citation.]"  (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)  A petitioner forfeits an issue when he makes only a blanket, conclusory statement, with no citation to authority or discussion of the authority as it applies to the facts of the case.  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)  Therefore, to the extent father did raise this issue, it is forfeited.  (*Ibid*.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2025, department personnel received an immediate response referral with allegations of physical abuse, emotional abuse, and severe neglect. Reports indicated that on August 8, 2025, mother hit minor with a wooden object multiple times, leaving a welt above her eyebrow.

Mother lost her marijuana pen and thought minor took it. Minor locked herself on the balcony to avoid being further hit. Mother told minor, "'If you do not jump off and kill yourself, I am going to hit you when you come inside.'" Minor believed mother. Minor jumped off the third-story balcony onto the neighbor's second-floor balcony. Minor's sibling, D.S., was in the home during the incidents.

An officer arrested mother for inhumane corporal punishment or injury of a child resulting in traumatic condition. (Pen. Code, § 273d, subd. (a).) Mother would not provide any information regarding how to contact minor's and D.S.'s fathers.

The social worker interviewed mother in jail. "[M]other disclosed that she was done with [minor] and did not want anything to do with her. The mother expressed that she would like [minor] to be a part of the system, and the Department could keep her. The mother shared she had no desire to continue to care for [minor] because she felt that she would ultimately just end up back in jail. Regarding the allegations, the mother initially stated that she had gotten into an altercation with [minor]. At some point, she believed [minor] had run out of the house to a neighbor's, which is something she usually does when they disagree."

In response to the social worker's question whether mother told minor to jump off the balcony, "mother advised that she and [minor] were fighting and disclosed that she did get physical with [minor], but would not expand on how physical. She shared that [minor] ran onto the balcony and she told [minor], 'If you jump off the balcony, you're going to kill yourself! You need to come inside, you're drawing negative attention to my house!'"

Mother indicated she wanted to reunite with D.S. but not with minor. Mother declined services for minor. "[M]other reiterated that the Department should take [minor], as 'she would be better off being in the system, where she could get the help she needs.'"

Minor "had a small bump on the left side of her forehead with a minor abrasion in the middle of the bump in various stages of healing. [Minor] indicated and pointed to a small scratch on her arm that she claimed had been caused during an altercation with her mother. She shared that the bump and abrasion on her head was caused by the mother as well."

Minor said mother hit her with a "'thigh master'" because she was taking too long to clean her room. "[M]other struck [minor] repeatedly on various parts of her body, causing the bump and the abrasion on her head." Minor "ran out onto the back balcony, and the mother continued to scream and threaten her, hitting her a few more times before she made it outside onto the balcony. She explained that the mother told her to 'jump off the balcony and kill herself, or to come inside the house and take a beating,' and was

4

threatening to hit her with a wooden object."

"Fearing that the mother was going to hit her with the wooden [object], and due to the incident that had happened the day prior, she explained that she climbed over the balcony and slid down holding onto the bars of the balcony so that she would not fall and swung into the neighbor's second-story balcony." Minor "reported that the mother often physically abuses her and that the mother frequently would make statements like 'she is better off without her' and compare her to her other siblings in a negative way."

Mother informed the social worker she had not seen or heard from father in years, and that he had no contact with minor. D.S.'s paternal grandmother "described a time when she heard the mother screaming at [minor] during a visit, hearing the mother tell [minor], 'I hate you! I hate you, I wish I never had you! If I could, I would pull over to the side of the highway and throw you in a ditch!'"

Minor's maternal grandmother informed the social worker she had once received a phone call from mother during which she threatened harm to minor and said "'she hates [minor] and wishes [minor] were dead, and that when she dies, she will know then how much she really hates her.'"

A parole agent "verified that . . . father had been recently arrested on April 18, 2025, for a parole violation and was released on May 25, 2025." The social worker spoke with father, who "reported the last time he had contact with [minor] was in March of 2022. He expressed that there was a protection order against him, and he lost contact with [minor] due to the mother's evasiveness."

5

Mother had a prior history with the department between 2012 and 2025, which included unfounded and inconclusive allegations of domestic violence, physical abuse, general abuse, emotional abuse, and general neglect. Father had a prior history with the department, which included substantiated allegations of domestic violence and unfounded and inconclusive allegations of physical abuse, general abuse, emotional abuse, sexual abuse, and general neglect.[4]

In May 2012, the department received a referral alleging mother was the victim of domestic violence when father punched her in the face in front of one of her children. In March 2014, a referral alleged that father stabbed mother in front of one of the children; mother was hospitalized. In July 2014, father "was arrested and incarcerated for two outstanding warrants for rape and domestic violence . . . ."

In October 2020, the department substantiated allegations when it was reported that father hit his girlfriend in the face while minor was asleep in the room. Officers arrested father. Minor reported that she witnessed father push his girlfriend on the bed and place his hand around her neck. Minor also relayed that she showered with father on one occasion but denied being touched inappropriately.

In October 2021, and February and March 2022, there were multiple referrals alleging that father had sex with women in front of minor and would walk around naked in front of her. It was further alleged that father would physically abuse minor, sold drugs in front of her, and was a registered sex offender. Minor reported that father hit her.

---

[4] We relate below only those referrals relevant to the jurisdictional findings against father. There were many other referrals.

In March 2022, minor "admit[ted] that the father would hit her from time to time on the arm or shoulder, but denied that it ever left any marks or bruising."

Mother had a criminal history that included driving under the influence and domestic violence. Father's criminal history consisted of a conviction of rape by force or fear. Father was a registered sex offender. Father had been arrested on April 18, 2025, for a parole violation for which he was released on May 25, 2025.

The department filed a juvenile dependency petition alleging, as pertinent here, that mother engaged in acts of domestic violence with her partners while in the presence of minors (b-4), that father knew or reasonably should have known minor was being physically abused by mother (b-5), and that father failed to provide for minor (b-6). The court detained minor on August 13, 2025.

In the jurisdiction and disposition report filed August 29, 2025, the social worker recommended that the court find the allegations in the petition true, that minors be removed from parents, and that parents receive reunification services. The social worker found additional criminal history for mother consisting of convictions for assault with force likely to cause great bodily injury, malicious harassment, and vandalism. Father's criminal history reflected additional charges of domestic battery and several drug charges.

The social worker interviewed father, who "became combative and stated the only thing that I should be talking to him about was returning his child back into his care." "Father . . . continued to be combative and expressed that Riverside County illegally took

7

his child away from him and that he would go to the Supreme Court and sue the County of Riverside if his child was not returned to his care on Friday, August 29, 2025."

With respect to the b-5 allegation, father said it was false. "He reported when he was released from jail in 2017, he tried to look for [minor], but the mother let her go out of the state because [mother] had gone to jail. He denied knowing where the child was for several years." With respect to the b-6 allegation, father said, "'Do [you] hear what you just asked me. I just answered that question. I didn't know where my daughter was.' Father . . . stated he put out Amber Alerts in an attempt to locate his child."

The social worker noted that "in 2022 during an interview with the DA Abduction Unit, [father] became defensive while being interviewed and stated, who would be able to stop him if he left California with [minor]. Thus, there is concern for the father fleeing with the child, as he has family ties in Chicago. Further, Father . . . has engaged in acts of domestic violence, while in the presence of [minor], where the child contacted the police herself, and the father was arrested . . . . Those allegations were substantiated, along with inconclusive allegations for emotional abuse and . . . father not being able to be located while [minor] was in his care."

The social worker further observed that "father's significant criminal history to include being a registered sexual offender and domestic violence altercations, in the presence of [minor], places her at risk of harm and/or danger. Father . . . declined the need to engage in services to ensure the safety and well-being of [minor] if returned to his care. Further, there is concern the father might be a flight risk with [minor] as he had

8

[minor] leave to another state before and the Department was unable to locate [minor]."

At the hearing on September 4, 2025, counsel for the department noted, "I did inform all counsel earlier today, in further discussion with the Department, Department will be considering a [section] 361.5 (b)(12) bypass for Father . . . and the mother, given that they do have convictions that would meet the requirements for a (b)(12) bypass."

In the addendum report of October 2, 2025, the social worker recommended that reunification services to parents be denied pursuant to section 361.5, subdivision (b)(12), and that the court set the section 366.26 hearing. The social worker met with minor, who said she did not want to attend the upcoming hearing because "she does not feel comfortable around her father." She said she did not want to live with father because "he had 'raped someone before' and previously wore an ankle monitor. She also reported that her father 'surrounds himself with bad people sometimes.' When asked if she would like to visit with her father, [minor] stated 'no.' She also denied wanting to speak with him by phone." In another interview with minor, she again indicated she did not want contact with father. Minor "adamantly expressed that she does not want any contact with Father . . . either in person or by phone."

Mother "reported one prior domestic altercation with Father . . . which resulted in his incarceration." "Father . . . declined to participate in services designed to ensure the safety and well-being of [minor]."

On October 17, 2025, the department filed a first amended juvenile dependency petition, as pertinent here, alleging mother engaged in acts of domestic violence with her

9

partners, including father, in the presence of minors (b-4); that father failed to provide for minor (b-6); and that minor had been abused, which posed a risk to D.S. (j-1).[5]

At the hearing on October 17, 2025, the department argued father was on the "sex offender registry, along with the rape conviction. Additionally, given that the father has had little to no contact with the minor, and the minor has expressed throughout the reports that she does not want to visit or communicate with the father; she does not feel safe in his care and is aware of his rape conviction." "[P]lacing the minor in the care and custody of the father and providing services to the father through reunification services while he's a sex offender registrant, despite that having occurred years ago, continues to place the minor at risk of potential sexual abuse." Minor's counsel agreed with the department.

Father's counsel argued that the department had failed to prove father's rape conviction, and, irrespective, that it was remote in time. He maintained that minor had never suffered harm while in his care, and that father always provided for minor.

The court found the allegations in the amended petition true, sustained the petition, removed minors from parents' custody, ordered reunification services for parents bypassed pursuant to section 361.5, subdivision (b)(12), and set the section 366.26 hearing.

---

[5] In his petition, father notes that, "One of the allegations (j-1) dealt with the risk of abuse or neglect of a sibling. That allegation will be discussed separately below." Father does not later discuss that allegation. Nonetheless, it does not appear that that allegation would be relevant to the claims father raises in his petition.

II.  DISCUSSION

Father contends insufficient evidence supports the b-4 allegation, and that it was not in minor's best interest for the court to bypass his reunification services.  We disagree.

### A.      *Justiciability*

"'[A] jurisdictional finding good against one parent is good against both.  More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent.  [Citations.]'"  (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)  "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate."  (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 (*Ashley B.*); accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896.)  "'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .'  [Citation.]"  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308 (*Briana V.*); accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 237 (*L.O.*).)

As here, where father does not challenge the other jurisdictional findings as to mother, or even the b-6 allegation as to him, "'any decision we might render on the allegation[] involving Father will not result in a reversal of the court's order asserting jurisdiction.  The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations.  Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since

that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction.'" (*Briana V.*, *supra*, 236 Cal.App.4th at p. 308.)[6]

"In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; accord, *In re S.F.* (2023) 91 Cal.App.5th 696, 719-720 (*S.F.*); *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*) ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

"However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.'" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763, disapproved of on another issue in *In re N.R.* (2023) 15 Cal.5th 520, 560; accord, *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164; contra, *I.A.*, *supra*, 201 Cal.App.4th at p. 1495 [dismissing appeal and finding that "[i]n any future dependency proceeding, a finding of jurisdiction must be based on current conditions"]; *L.O.*, *supra*, 67 Cal.App.5th at p. 237.) "Although a

---

[6] Father did not raise justiciability in his petition, i.e., he did not address whether we had or should exercise any discretion to entertain his argument regarding the jurisdictional finding, considering that he does not challenge the other jurisdictional findings against mother, or the b-6 allegation against him.

jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of 'stigma' alone is insufficient to sustain an appeal. The stigma must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*In re D.P.* (2023) 14 Cal.5th 266, 277.)

Here, father does not challenge the other jurisdictional findings against mother or the b-6 allegation against him. Thus, even if we found that insufficient evidence supported the court's order sustaining the b-4 allegation, the juvenile court would still have jurisdiction over minor and father.

Moreover, the court would still have had jurisdiction to enter the dispositional order bypassing father's reunification services. Furthermore, as discussed *post*, it is not reasonably probable that even absent a jurisdictional finding against father, the juvenile court would have granted him reunification services. Father fails to identify any other potential basis for us to exercise our discretion to address his claim, such as any prejudicial effect or any consequences beyond jurisdiction. Therefore, we decline to exercise our discretion to review whether sufficient evidence supported the court's finding sustaining the b-4 allegation.

B.      *Sufficiency of the Evidence*

Even assuming we exercised our discretion to review the court's finding sustaining the allegation against father, we would hold that sufficient evidence supported it.

""""In reviewing a challenge to the sufficiency of the evidence supporting the

jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'"' [Citations.]" (*L.O.*, *supra*, 67 Cal.App.5th at p. 238.)

Here substantial evidence supports the b-4 allegation that parents had engaged in domestic violence. Father was charged with domestic battery in 2007. In May 2012, the department received a referral alleging mother was the victim of domestic violence when father punched her in the face in front of one of her children. In March 2014, a referral alleged that father stabbed mother in front of one of the children; mother was hospitalized. In June 2014, father was arrested for an outstanding warrant for domestic violence. In October 2020, the department substantiated allegations when it was reported that father hit his girlfriend in the face while minor was asleep in the room. Officers arrested father. Thus, sufficient evidence supported the court's order sustaining the b-4 allegation, and its inherent finding that father had engaged in a pattern of domestic violence in the presence of minor, which posed a current, substantial risk to minor.

14

*C.      Bypass of Father's Reunification Services*

Father argues the order bypassing his reunification services was not in minor's best interest.[7] We disagree.

Here, "'Even if we found no adequate evidentiary support for the juvenile court's findings with respect to [father's] conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights.'" (*Briana V.*, *supra*, 236 Cal.App.4th at p. 308; see *Ashley B.*, *supra*, 202 Cal.App.4th at p. 979 ["We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result"].)

"[T]he juvenile court is not required to distinguish between a custodial and noncustodial parent when ordering or bypassing reunification services for a child in out-of-home placement." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57; see *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1508 [noting the juvenile court should have bypassed nonoffending, noncustodial parent's reunification services].) "In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; accord, *S.F.*, *supra*, 91 Cal.App.5th at pp. 719-720; *I.A.*, *supra*, 201 Cal.App.4th at p. 1492 ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the

---

[7] Father does not challenge the fact that he had been convicted of a violent felony.

15

court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

"Generally, the juvenile court is required to provide reunification services to a child and the child's parents when a child is removed from parental custody under the dependency laws. [Citation.] The purpose of providing reunification services is to 'eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible.' [Citation.] It is also the legislative intent, 'that the dependency process proceed with deliberate speed and without undue delay.' [Citation.] 'Thus, the statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation. [Citation.] Specifically, section 361.5, subdivision (b), exempts from reunification services "'those parents who are unlikely to benefit'" [citation] from such services or for whom reunification efforts are likely to be "fruitless" [citation].' [Citation.]" (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.)

"Section 361.5[, subdivision] (b)(12) allows the court to bypass reunification services where the parent or guardian has been convicted of a 'violent felony' within the meaning of Penal Code section 667.5, subdivision (c). [Citations.]" (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112 [father whose reunification services were bypassed due to his two convictions for second degree robbery]; accord *In re Christopher L.* (2020)

16

56 Cal.App.5th 1172, 1189 [father whose reunification services were bypassed due to his conviction for robbery].)

"Once it has been determined one of the situations enumerated in section 361.5, subdivision (b), applies, ""'the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]'" [Citation.]' [Citations.] Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court 'shall not order reunification for [the] parent . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child.' [Citation.] 'The burden is on the parent to . . . show that reunification would serve the best interests of the child.' [Citation.]" (*In re I.A.*, *supra*, 40 Cal.App.5th at p. 24.)

"We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence. [Citation.] Under such circumstances, we do not make credibility determinations or reweigh the evidence. [Citation.] Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' [Citation.] In doing so, we are mindful of the higher standard of proof required in the court below when reunification bypass is ordered." (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121-1122.)

Father failed his burden of showing that reunification services were in minor's best interest. Here, father had a conviction for rape by force or fear, and he was a

registered sex offender. Father had been arrested as recently as April 18, 2025, for a parole violation. Although, deemed unfounded or inconclusive, there had been prior referrals of sexual abuse, including allegations that father showered with minor, had sex with a girlfriend in front of minor, and walked around naked in minor's presence. Thus, as argued by the department, defendant posed a risk of sexual abuse against minor.

Father was charged with domestic battery in 2007. In May 2012, the department received a referral alleging mother was the victim of domestic violence, when father punched her in the face in front of one of her children. In March 2014, a referral alleged that father stabbed mother in front of one of the children; mother was hospitalized. In June 2014, father was arrested on an outstanding warrant for domestic violence. In October 2020, the department substantiated allegations when it was reported that father hit his girlfriend in the face while minor was asleep in the room. Officers arrested father.

Minor reported that she witnessed father push a girlfriend on the bed and place his hand around her neck. Minor reported that father hit her. In March 2022, minor "admit[ted] that the father would hit her from time to time on the arm or shoulder, but denied that it ever left any marks or bruising." Thus, father posed a risk of physical abuse directed at minor, or, at minimum, that she would be present during domestic violence incidents by father against others.

In 2022, father threatened to leave California with minor. Thus, father posed a risk of absconding with minor if given custody or visitation with minor.

18

Mother had informed the social worker she had not seen or heard from father in years, and that he had no contact with minor. Father "reported the last time he had contact with [minor] was in March of 2022." Thus, father had not had any contact with minor for over three years.

Furthermore, minor, who was 12 years old on the date of the hearing, said she did not feel comfortable around father. She said she did not want to live with him because "he had 'raped someone before' and previously wore an ankle monitor. [Minor] also reported that her father 'surrounds himself with bad people sometimes.' When asked if she would like to visit with her father, [minor] stated 'no.' She also denied wanting to speak with him by phone." In another interview with minor, she again indicated she did not want contact with father. Minor "adamantly expressed that she does not want any contact with Father . . . either in person or by phone."

Finally, "Father . . . declined to participate in services designed to ensure the safety and well-being of [minor]." Thus, father failed to prove that reunification services were in minor's best interest, and it is not reasonably probable the juvenile court would have found reunification services were in minor's best interest even if it found the b-4 allegation untrue.

## III.  DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.